CRAWLEY, Judge.
Jimmy Neal Sutton and Nocona Sue Sutton Elrod were divorced in September 1990. The parties had one child born during the marriage. In January 1997, the father filed a petition requesting the trial court to establish his visitation rights with the child and to determine his child support arrearage. The mother answered and cross-petitioned for a termination of the father’s parental rights. Following a hearing, the trial court, among other things, terminated the father’s parental rights. The father appeals.
The father first argues that the trial court erred by not appointing a guardian ad litem for the child. Although it is a common and preferred practice, the appointment of a guardian ad litem for the child is not statutorily required in a termination-of-parental-rights case. See Ala.Code 1975, § 12-15-1 et seq., and Ala.Code 1975, § 26-18-1 et seq.
The father also argues that this court, in State ex rel. McDaniel v. Miller, 659 So.2d 640 (Ala.Civ.App.1995), reversed a trial court’s termination of a father’s parental rights because no guardian ad litem was appointed for the child. Judge Thigpen, writing for the majority, stated:
“In the instant case, there was no hearing on the parents’ petition, and there is no indication that a guardian ad litem was appointed to represent the interest of the child. It appears that the parents simply made an agreement, with no consideration given to the child’s rights and best interest. The child’s right to current and future support, including, possibly, payment of a college education, and the child’s right of inheritance from the father, were apparently never considered, and the child’s rights certainly were not protected. Termination of this father’s parental rights appears to be based on nothing more than *553 a convenient mutual agreement of the parents.”
Id. at 642.
McDaniel does not hold that the absence of a guardian ad litem, by itself, is reversible error. The court in McDaniel held that the parents could not agree to terminate the parental rights of the father without considering the interests of the child. The fact that no guardian ad litem was appointed to represent the interests of the child, along with the fact that no hearing was held and the fact that no evidence indicated what would be in the child’s best interests, was one factor supporting a reversal of the judgment terminating the father’s parental rights. In this case, the court heard testimony from a variety of witnesses, and a substantial part of the testimony focused on the best interests of the child. Therefore, the failure to appoint a guardian ad litem does not mandate a reversal in this case.
The father next argues that the evidence does not support a judgment terminating his parental rights. The termination of parental rights is a drastic measure, and the courts gravely consider such action. Ex parte Beasley, 564 So.2d 950 (Ala.1990). A natural parent’s prima facie right to the custody of his or her child is outweighed only by clear and convincing evidence that termination of parental rights is in the best interests of the child. L.N. v. State Dep’t of Human Resources, 619 So.2d 928 (Ala.Civ. App.1993). In order to determine the child’s best interests, the trial court considers the parent’s physical, financial, and mental abilities to care for the child. J.L.B. v. State Dep’t of Human Resources, 608 So.2d 1367 (Ala.Civ.App.1992).
Our supreme court has held:
“The two-prong test that a court must apply in a parental rights termination case brought by a custodial parent consists of the following: First, the court must find that there are grounds for the termination of parental rights, including, but not limited to, those specifically set forth in [Ala. Code 1975,] § 26-18-7. Second, after the court has found that there exist grounds to order the termination of parental rights, the court must inquire as to whether all viable alternatives to a termination of parental rights have been considered.”
Ex parte Beasley, 564 So.2d 950, 954 (Ala.1990). This court will affirm the trial court’s judgment unless it determines that the juvenile court’s findings are so unsupported by the evidence as to be plainly and palpably wrong. Lee v. Jackson County Dep’t of Pensions & Security, 470 So.2d 1294, 1296 (Ala.Civ.App.1985).
The mother contends that the father abandoned the child. Ala.Code 1975, § 26-18-3(1), defines “abandonment” as:
“A voluntary and intentional relinquishment of the custody of a child by a parent, or a withholding from the child, without good cause or excuse, by the parent, of his presence, care, love, protection, maintenance or the opportunity for the display of filial affection, or the failure to claim the rights of a parent, or failure to perform the duties of a parent.”
At the time of the hearing, the child was eight years old. The father admitted that he had not seen the child in seven years. The father had been living and working in Illinois during that time. He testified that he had made “several” attempts during that seven-year period to locate the child but that the mother had moved and he did not have her new address. The mother has moved a few times during the seven-year period, but she has continuously resided in Marshall County and has worked at the same job except for a short period of time. The father testified that he telephoned the father of the mother’s second husband to learn the mother’s new address. The father has several close relatives who live in Marshall County, and he did not- ask them for help in locating the child. The father’s mother testified that after a period of time she simply lost contact with the child and the child’s mother. The mother testified that the father had never paid child support. The father testified that for a time he had paid the mother in cash, but had stopped paying when he did not know where she and the child resided.
As stated above, the father has not had contact with the child for seven of the eight *554 years of the .child’s life, he made minimal efforts to locate the child during that time, and he provided no support for the child. We conclude that the trial court had much evidence to indicate that there were no viable alternatives to termination of the father’s parental rights. The mother presented much evidence indicating that the child was currently well-adjusted and doing well in school and that starting a relationship between the father and the child would be detrimental to the child. No members of the father’s family had made efforts to be a part of the child’s life, either. We conclude that the trial court had clear and convincing evidence that a termination of the father’s parental rights was in the best interests of the child. Therefore, we affirm the judgment of the trial court terminating the father’s parental rights.
AFFIRMED.
YATES, MONROE, and THOMPSON, JJ., concur,
ROBERTSON, P.J., concurs in the result.