PITTMAN, Judge.
D.C. (the “father”) and S.S.C. (the “mother”) are the parents of H.C. (the “child”) who was born in April 1995. When the child was 12 days old, the father dropped her. The child’s skull was fractured, which caused her to suffer from *18 permanent-partial paralysis and some brain damage resulting in learning disabilities and seizures. Shortly after the child’s 1995 accident the Madison County Department of Human Resources (“DHR”) filed a dependency petition. The trial court found the child to be dependent and awarded custody to J.C. and C.C. (“the paternal grandparents”) in June 1995. DHR ceased its involvement in the case in 1996, and the paternal grandparents continued to have custody of the child with each parent’s consent.
In February 2001, the paternal grandparents filed a petition to terminate the mother and the father’s parental rights. Following a trial, the juvenile court terminated the mother and the father’s parental rights. The juvenile court’s judgment states, in pertinent part:
“1. The above named child, who previously had been adjudicated to be dependent, and who has been in the physical custody of the [paternal grandparents] since she was twelve (12) weeks old, and the Temporary Legal Custody of the [paternal grandparents] since December 7, 1999, remains a dependent child.
[[Image here]]
“3. The best interests of the child require entry of this Order. The child suffers from significant medical problems, which are a direct result of an injury sustained in her infancy. The [father] testified [to] dropping the infant. In addition to a traumatic brain injury (TBI), paralysis in her legs and arms, seizures, this child has learning disabilities.
“4. The child has lived all of her six (6) years of life in the home of the [paternal grandparents]. Most — if not all — of her medical, financial, and family care has been provided by the [paternal grandparents].”
A nonparent who seeks to terminate the parents’ parental rights must prove by clear and convincing evidence that the child is dependent and that there are no viable alternatives to a termination of the parents’ parental rights. Ex parte Beasley, 564 So.2d 950 (Ala.1990). Section 26-18-7(a), Ala. Code 1975, states:
“If the court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child, the court shall consider, and in cases of voluntary relinquishment of parental rights may consider, but not be limited to, the following:
“(1) That the parents have abandoned the child, provided that in such cases, proof shall not be required of reasonable efforts to prevent removal or reunite the child with the parents.
“(2) Emotional illness, mental illness or mental deficiency of the parent, or excessive use of alcohol or controlled substances, of such duration or nature as to render the parent unable to care for needs of the child.
“(3) That the parent has tortured, abused, cruelly beaten, or otherwise maltreated the child....
“(4) Conviction of and imprisonment for a felony.
“(5) Unexplained serious physical injury to the child under such circumstances as would indicate that such *19 injuries resulted from the intentional conduct or willful neglect of the parent.
“(6) That reasonable efforts by the [DHR] leading toward the rehabilitation of the parents have failed.
[[Image here]]
“(8) That parental rights to a sibling of the child have been involuntarily terminated.”
Section 26-18-7(b) further provides that if the child is not in the custody of the parents, the juvenile court may consider whether the parents are providing monetary support for the child, whether they are regularly exercising visitation with the child, and whether they are adjusting their “circumstances to meet the needs of the child.”
The grandmother testified that the reason she and the grandfather had filed'the petition to terminate the parents’ parental rights was not because of any particular harmful conduct by either parent or any particular harmful environment provided by either parent. In response to a question as to why she and the grandfather had filed the petition, the grandmother testified:
“Well, it’s hard to live every day wondering if [the mother and the father] are going to decide to come and say I want to take [the child] away. We have invested our hearts and soul and life into trying to — well, when we first got her she was almost dead. We were trying to just see that she would live. And then it was to try to see that she got better and now, we’d like to plan for the future. We’d like to — -as any parent would. We feel like she’s ours. We feel like she’s our child so we couldn’t — you know, you can give birth — there’s two kinds of parents. There’s birth parents and parents that love a child and take care of them and cry with them and keep them going, you know. I think there’s a parent that gives you life and a parent that gives you birth, and we feel like we’ve given her life and we would like to continue to give her life and we would like to continue being able to plan for her future. We can’t plan what’s going to happen next year, or next month, because we don’t know when we might be faced with fighting in order to try to do those things that she needs.”
The mother and the father have another child who, after their divorce, is in the mother’s custody. When asked if she would prevent the child from seeing the sibling if the court terminated the parents’ parental rights, the grandmother responded, “No, that would be kind of hard to do. [The child] knows [the sibling], [the child] loves [the sibling.]” The grandmother also testified that she would not prevent the child from seeing the parents, even after the court terminated their parental rights. The grandmother testified, “There again, I think that [keeping the child away from her parents] would be kind of impossible to do. [The child] knows who [the] mother is, she knows who [the] daddy is.”
The father is employed by a restaurant and has a possibility of moving into a management position. He lives in an apartment with a friend. The father has unsupervised visitation, pursuant to the divorce judgment, with the other child who is in the mother’s custody. The father admits to having used marijuana in the past, but testified that he has not smoked it in more than two years.
The mother has custody of her other child. She has remarried and lives in her father’s house and takes care of her father who has medical problems. The mother was recently laid off and her former employer testified that the lay-off was not due to her work performance but for financial reasons. The mother did file for Social Security benefits for the child even though *20 the child is in the paternal grandparents’ custody, and the mother is having to make arrangements to reimburse those Social Security benefits.
We conclude that the record does not contain clear and convincing evidence indicating that the child is dependent. As stated above, both the father and the mother each have housing and have had a stable income. The record does contain evidence indicating that the father and the mother rarely attend the child’s doctor appointments and that they are not prepared to perform the daily therapy and exercises the child requires. Because DHR ceased its involvement several years ago, there is no individualized service plan (“ISP”) requiring the parents to attend doctor appointments or to train themselves to provide the medical needs for the child. The testimony indicates that neither parent has unsupervised visitation with the child. Neither parent provides child support for the child; however, the record contains no child-support order requiring them to pay child support.
The mother and the father each argue that a viable alternative to terminating parental rights exists in this case which is to maintain the present situation — maintain custody with the paternal grandparents and maintain the supervised visitation. We agree. As stated above, the record does not indicate that the parents pose any physical or emotional harm to the child.
Therefore, the juvenile court’s judgment terminating the parents’ parental rights is reversed and the cause is remanded.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY, THOMPSON, and MURDOCK, JJ., concur in the result.