1 So.3d 1002 (2008)
Ex parte J.E.
(In re J.E.
v.
V.C.E.).
1060874.
Supreme Court of Alabama.
May 9, 2008.
*1004 Rodney L. Ward, Gadsden, for petitioner.
John D. McCord of McCord & Martin, Gadsden, for respondent.
PER CURIAM.
On June 8, 2007, this Court granted the petition for a writ of certiorari filed by J.E. ("the father") to review the no-opinion affirmance by the Court of Civil Appeals of the Etowah District Court's order terminating his parental rights as to the minor child born of his marriage to V.C.E. ("the mother"). For the reasons stated herein, we reverse and remand.

Facts
We note that this case does not involve a stepparent who is seeking to adopt a child and fulfill parental responsibilities to the child in place of the biological parent. This case also does not involve the termination of parental rights in a dependency matter as a step toward providing a child with permanent placement in a safe environment, as is often the case when, for example, the State petitions a court to terminate parental rights. The child here, whose best interests are the ultimate concern in this case, is residing with the custodial parent, the mother.
The father and the mother married, had a child, and, in January 1999, divorced. The child was three years old when the parents divorced. The mother was awarded sole legal and physical custody of the minor child; the father was granted visitation rights and was ordered to pay child support in the amount of $766.96 per month. The mother and father reconciled in June 1999, and the reconciliation lasted until January 2001.
The father irregularly paid child support, and the mother filed a petition in the Etowah Circuit Court seeking to have the father held in contempt. The parties reached an agreement regarding custody and support, and on December 12, 2002, Judge William H. Rhea III entered an order enforcing the parties' agreement. The circuit court's order held the father in contempt for failure to pay child support; awarded the mother a judgment in the amount of $12,169.27 for past-due child support and $55.15 for past-due dental expenses for the child; reduced the father's child-support obligation to $102 per week; and ordered the father to pay $18 per week toward the arrearage. The order further stated that "[t]he failure of the [father] to make one child support payment will result in this Court issuing a Pick Up Order which will incarcerate the [father] in the Etowah Detention Center for a period of 30 days."
The mother later filed a second contempt petition in the Etowah Circuit Court. Judge Rhea granted her petition. By an order entered December 16, 2003, the circuit court ordered the father to be jailed for 30 days or until the father made a $1,000 cash child-support payment;[1] further reduced the father's child-support obligation to $50 per week "due to [the father's] being without a job"; and ordered the father to inform his attorney of record when he obtained employment so that his *1005 child-support obligation could be recalculated accordingly. In addition, Judge Rhea's December 16, 2003, order stated:
"Due to the fact that the [father] admitted in open court to his continued use of drugs, and, further, due to the testimony of the [mother] with regard to the [father's] recent actions,[2] the [father] will not be allowed to have visitation rights until he can prove to this Court that he has rehabilitated himself to the point where he is a worthy candidate for visitation with said child."
On March 30, 2006, the mother filed a petition in the District Court of Etowah County to terminate the father's parental rights.
On May 1, 2006, the district court held a detailed hearing on the mother's petition, during which both the mother and the father testified. The district court heard evidence as to the father's child-support payments and child-support arrearage, his sporadic attempts at contact and visitation with the child, and his criminal record. The district court also heard allegations that the father had used drugs in the past and that he had shown up at the mother's house in an altered mental state demanding to be allowed to visit the child.[3]
On May 8, 2006, the district court judge, Judge William D. Russell, Jr., entered an order containing the following findings of fact and conclusions of law:
"It should be noted that the father has made no effort to have Judge Rhea modify [the circuit court's December 16, 2003, order suspending visitation]. According to the testimony of the mother in the present hearing, the father attempted to visit the child only twice from June 2003 through the date of the hearing. The last attempted visit by the father was on January 26, 2005. Contrary to Judge Rhea's order, the mother offered to allow supervised visitation in her home, but refused any unsupervised visitation. The father made no attempt to contact the child after 01/26/2005 until a telephone call to the mother's place of employment in February 2006. Paragraph 6 of Judge Rhea's Order of 12/16/2003 further required the father to immediately notify his attorney and the mother's attorney `upon his being re-employed.' The testimony in the present hearing further revealed that the father is currently employed, earning $12 per hour. Obviously, he failed to report that increased income to his attorney, to the mother's attorney, or to Judge Rhea, so as to have his weekly child support obligation increased. The father is very content to continue paying $50.00 per week. The father strongly objects to the termination of his parental rights, and points to the fact that he has paid his $50.00 per week child support on a regular, continuous basis since December 2003.
"The statute [Ala.Code 1975, § 26-18-7,[4] ] requires in subsection (a) that the *1006 Court consider eight factors, which it has done. The primary factors demonstrated by the evidence with respect to the father are subsections (a)(1) and (b)(1). He has in effect voluntarily relinquished his parental rights by failing to re-petition Judge Rhea to reinstate his visitation rights. He tries to blame the mother's refusals as the reason for his lack of contact. His blame is misplaced. Visitation was not at the discretion of the mother. Judge Rhea had indefinitely suspended all visitation. The father should have re-petitioned Judge Rhea first. He has failed to `provide for the material needs of the child or to pay a reasonable portion of its support, where the parent is able to do so.' As to the father, the Court found no evidence of the factors listed in subsection (a)(2), (3), (4), (5), (7), and (8). Subsection (b) requires several additional judicial considerations. The Court found ample evidence of the factors in subsections (b)(1), (2), (3), and (4). As to subsection (4), the father has clearly demonstrated his inability and unwillingness to adjust his circumstances to meet the needs of the child.
"IT IS THEREFORE ORDERED ADJUDGED AND DECREED BY THE COURT AS FOLLOWS:
"(1) All parental rights of the father ... with and to [the child] are hereby permanently terminated."
(Capitalization in original; second emphasis added.)
On May 16, 2006, the father appealed the district court's judgment to the Alabama Court of Civil Appeals. That court affirmed the district court's judgment without an opinion. Presiding Judge Crawley filed an opinion, dissenting from the no-opinion affirmance. J.E. v. V.C.E, 1 So.3d 1001 (Ala. Civ App.2006) (Crawley, P.J., dissenting).
The father then filed a petition for the writ of certiorari to this Court. This Court granted the petition. The father argues that the Court of Civil Appeals erred in affirming the district court's judgment because, he argues, that court improperly considered the factors outlined in Ala.Code 1975, § 26-18-7(b), which applies when a child is "not in the physical custody of its parent"; concluded without sufficient evidence that the father had abandoned the child; and failed to consider viable alternatives to the termination of the father's parental rights.

Standard of Review
"[T]he primary focus of a court in cases involving the termination of parental rights is to protect the welfare of the children and at the same time to protect the rights of their parents." Ex parte Beasley, 564 So.2d 950, 952 (Ala.1990); see also Ala.Code 1975, § 26-18-2, a part of Alabama's Child Protection Act, § 26-18-1 et seq. "The right to parent one's child is a fundamental right," K.W. v. J.G., 856 So.2d 859, 874 (Ala.Civ.App.2003), and because "the termination of parental rights strikes at the very heart of the family unit, a court should terminate parental rights only in the most egregious of circumstances." Beasley, 564 So.2d at 952.
Where, as here, the custodial parent petitions to terminate the parental rights of the noncustodial parent, the trial court's analysis consists of two parts. 564 So.2d at 954. First, the trial court must determine whether grounds exist for terminating parental rights. 564 So.2d at 954. Grounds exist for terminating parental rights if the parent in question is "unable or unwilling to discharge [his] responsibilities to and for the child, or ... the conduct or condition of the parent[] is *1007 such as to render [him] unable to properly care for the child and ... such conduct or condition is unlikely to change in the foreseeable future." Ala.Code 1975, § 26-18-7(a) (stating that, under such conditions, a court "may terminate the parental rights of the parent[]"). A trial court's order terminating parental rights must be based on "clear and convincing evidence, competent, material, and relevant in nature." Ala.Code 1975, § 26-18-7(a).
In determining whether such grounds exist, factors for the trial court's consideration include, but are not limited to, those grounds set forth in Ala.Code 1975, § 26-18-7. Beasley, 564 So.2d at 954. The factors set forth in Ala.Code 1975, § 26-18-7, are as follows:
"(a) ... In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child, the court shall consider, and in cases of voluntary relinquishment of parental rights may consider, but not be limited to, the following:
"(1) That the parents have abandoned the child, provided that in such cases, proof shall not be required of reasonable efforts to prevent removal or reunite the child with the parents.
"(2) Emotional illness, mental illness or mental deficiency of the parent, or excessive use of alcohol or controlled substances, of such duration or nature as to render the parent unable to care for needs of the child.
"(3) That the parent has tortured, abused, cruelly beaten, or otherwise maltreated the child, or attempted to torture, abuse, cruelly beat, or otherwise maltreat the child, or the child is in clear and present danger of being thus tortured, abused, cruelly beaten, or otherwise maltreated as evidenced by such treatment of a sibling.
"(4) Conviction of and imprisonment for a felony.
"(5) Unexplained serious physical injury to the child under such circumstances as would indicate that such injuries resulted from the intentional conduct or willful neglect of the parent.
"(6) That reasonable efforts by the Department of Human Resources or licensed public or private child care agencies leading toward the rehabilitation of the parents have failed.
"(7) That the parent has been convicted by a court of competent jurisdiction of any of the following:
"a. Murder or voluntary manslaughter of another child of that parent.
"b. Aiding, abetting, attempting, conspiring, or soliciting to commit murder or voluntary manslaughter of another child of that parent.
"c. A felony assault or abuse which results in serious bodily injury to the surviving child or another child of that parent. The term `serious bodily injury' means bodily injury which involves substantial risk of death, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty.
"(8) That parental rights to a sibling of the child have been involuntarily terminated.
"(b) Where a child is not in the physical custody of its parent or parents appointed by the court, the court, in addition to the foregoing, shall also consider, but is not limited to the following:
"(1) Failure by the parents to provide for the material needs of the child or to pay a reasonable portion of *1008 its support, where the parent is able to do so.
"(2) Failure by the parents to maintain regular visits with the child in accordance with a plan devised by the department, or any public or licensed private child care agency, and agreed to by the parent.
"(3) Failure by the parents to maintain consistent contact or communication with the child.
"(4) Lack of effort by the parent to adjust his or her circumstances to meet the needs of the child in accordance with agreements reached, including agreements reached with local departments of human resources or licensed child-placing agencies, in an administrative review or a judicial review.
"(c) In any case where the parents have abandoned a child and such abandonment continues for a period of four months next preceding the filing of the petition, such facts shall constitute a rebuttable presumption that the parents are unable or unwilling to act as parents. Nothing in this subsection is intended to prevent the filing of a petition in an abandonment case prior to the end of the four-month period."
If the trial court determines, based on all relevant factors, that grounds exist for terminating parental rights, then the court must proceed to the second part of its analysis, which is to consider whether all viable alternatives to terminating parental rights have been exhausted. Beasley, 564 So.2d at 954.
A trial court's factual findings premised on an ore tenus hearing are presumed correct. See Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994). "`This presumption is based on the trial court's unique position to directly observe the witnesses and to assess their demeanor and credibility.'" Ex parte T.V., 971 So.2d 1, 4 (Ala.2007)(quoting Ex parte Fann, 810 So.2d 631, 633 (Ala.2001)). On appeal, a judgment entered on factual findings based on ore tenus evidence will not be overturned "`unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court's discretion is shown. To substitute our judgment for that of the trial court would be to reweigh the evidence. This Alabama law does not allow.'" Perkins, 646 So.2d at 47 (quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993)).
However, the ore tenus standard of review has no application to a trial court's conclusions of law or its application of law to the facts; a trial court's ruling on a question of law carries no presumption of correctness on appeal. Perkins, 646 So.2d at 47; Eubanks v. Hale, 752 So.2d 1113, 1144-45 (Ala.1999). Thus, an appellate court will "review the trial court's conclusions of law and its application of law to the facts under the de novo standard of review." Washington v. State, 922 So.2d 145, 158 (Ala.Crim.App.2005).

Analysis

I. Did the district court err in considering the factors listed in Ala.Code 1975, § 26-18-7(b), as a basis for terminating the father's parental rights?
The father argues that the district court erred in considering the factors listed in Ala.Code 1975, § 26-18-7(b), as a basis for terminating his parental rights. That subsection sets forth factors to be considered "[w]here a child is not in the physical custody of its parent or parents appointed by the court."
The father argues that, because the child was in the physical custody of the mother, the child was "in the physical custody of its parent or parents appointed by *1009 the court" and, therefore, that subsection (b) does not apply in this case. However, the courts of this State have consistently applied subsection (b) in considering whether to terminate a noncustodial parent's rights, even when the child is in the physical custody of the custodial parent. See In re T.M.A., 590 So.2d 298, 299 (Ala. Civ.App.1991) (stating that, "[w]hen the child is not in the physical custody of the parent in question, the court may properly consider the parent's failure to provide for the child's material needs," a factor from subsection (b)); see also, e.g., A.S. v. W.J.T., 984 So.2d 1196 (Ala.Civ.App.2007)(considering evidence of father's child-support arrearage in reviewing trial court's ruling on the mother's petition to terminate the father's parental rights, where the mother had primary physical custody of the children); A.J.H.T. v. K.O.H., 983 So.2d 394 (Ala.Civ.App.2007)(considering evidence of mother's child-support arrearage, failure to visit or to maintain contact, and inability to adjust circumstances to meet children's needs, in addressing the father's petition to terminate the mother's parental rights where the father had physical custody of the children). Moreover, in terminating parental rights, in addition to the factors listed in § 26-18-7, a court may consider "any other factors that are relevant to the child's welfare." In re Colbert, 474 So.2d 1143, 1145 (Ala.Civ.App.1985).
The factors listed in subsection (b), such as failure to pay child-support obligations and failure to visit or maintain contact with the child, are clearly relevant in this case. The district court did not err in considering the factors listed in 26-18-7(b).

II. Did the district court err in finding that the father had abandoned the child by voluntarily relinquishing his parental rights?
The father next argues that the district court erred in finding that he had abandoned the child because he "has in effect voluntarily relinquished his parental rights by failing to re-petition Judge Rhea to reinstate his visitation rights." For the reasons stated below, we agree.
Under Alabama's Child Protection Act, any one of the following three circumstances constitutes "abandonment" of a child by a parent: (1) "[a] voluntary and intentional relinquishment of the custody of a child by a parent," or (2) "a withholding from the child, without good cause or excuse, by the parent, of his presence, care, love, protection, maintenance or the opportunity for the display of filial affection," or (3) "the failure to claim the rights of a parent, or failure to perform the duties of a parent." Ala.Code 1975, § 26-18-3. In this case, the district court concluded that the father abandoned the child by voluntarily relinquishing his parental rights when he failed to seek the reinstatement of his visitation rights. The record in this case contains no evidence to support the district court's legal conclusion that the father's failure to seek reinstatement of visitation constituted the voluntary relinquishment of his parental rights.
In Ex parte D.J., 645 So.2d 303, 306-07 (Ala.1994), this Court stated:
"`Relinquishment' is defined as `[a] forsaking, abandoning, renouncing or giving over a right.' Black's Law Dictionary 1161 (5th ed.1979).... Voluntary relinquishment is thus essentially synonymous with the concept of `waiver,' which has been defined as the `voluntary and intentional surrender or relinquishment of a known right.' Dominex, Inc. v. Key, 456 So.2d 1047, 1058 (Ala.1984)."
(Original emphasis omitted; emphasis added.)
Nothing in the record supports the district court's conclusion that by not seeking *1010 reinstatement of his visitation rights the father intended to surrender his parental rights. The father offered several reasons for failing to visit the child, including the mother's insistence (during the court-ordered suspension of visitation rights) that any visits between the father and the child occur in her house under her supervision and a protection-from-abuse order prohibiting the father from being around the mother for one year.[5]
If the district court disbelieved the father's reasons for failing to maintain contact with the child, it was well within its authority to do so. However, the district court was not within its authority in concluding that the father had "voluntarily relinquished" his parental rights, because there is no evidence in this record to support the inference that the father intended to surrender those rights. The record contains uncontradicted evidence indicating that, between December 16, 2003, when Judge Rhea terminated the father's visitation rights, and March 30, 2006, the date the mother filed her petition in the district court to terminate the father's parental rights, the father regularly paid child support (although in an amount below what he would have paid if he had complied with Judge Rhea's order and reported his employment), and that the father attempted to contact or see the child on several occasions. Although these facts may well indicate irresponsible and extremely poor parenting, neither these facts nor any other evidence in the record supports a legal conclusion that because the father had not attempted to petition for a reversal of Judge Rhea's visitation order he intended to surrender his parental rights with regard to the child.
This Court stresses that its holding as to the abandonment issue is limited to a determination that this record does not support the district court's legal conclusion that the father "voluntarily relinquished" his parental rights based solely on the fact that the father had not attempted to re-petition Judge Rhea for the reinstatement of his visitation rights.
By so holding, this Court does not take the position that evidence of the failure to seek reinstatement of visitation rights can never support a finding of abandonment. For example, failure to seek visitation may indicate a voluntary relinquishment of parental rights when that failure is accompanied with evidence of an intent to surrender those rights. Further, there are ways to abandon a child other than voluntarily relinquishing parental rights. As noted above, abandonment can occur if the parent "withhold[s] from the child, without good cause or excuse, ... his presence, care, love, protection, maintenance or the opportunity for the display of filial affection," or if the parent "fail[s] to claim the rights of a parent, or fail[s] to perform the duties of a parent." Ala.Code 1975, § 26-18-3. Thus, when clear and convincing evidence supports the conclusion that a parent's failure to seek visitation falls into one of these two categories, then such failure may support a finding of abandonment.
*1011 Nothing in this opinion is intended to prevent the district court's reconsideration, on remand, of whether there is clear and convincing evidence demonstrating that the father has abandoned the child by means other than "voluntary relinquishment" of his parental rights or whether the father is otherwise "unable or unwilling," § 26-18-7(a), Ala.Code 1975, to provide for the needs of the child.

Conclusion
For the reasons stated above, the Court of Civil Appeals' judgment is reversed and the case remanded to that court for it, in turn, to reverse the district court's judgment terminating the father's parental rights and to remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
SEE, LYONS, WOODALL, SMITH, and PARKER, JJ., concur.
COBB, C.J., concurs specially.
STUART and BOLIN, JJ., concur in the result.
MURDOCK, J., recuses himself.
COBB, Chief Justice (concurring specially).
Although the district court erred in finding that the father had voluntarily relinquished his parental rights, the district court is not precluded on remand from finding abandonment on some other basis if clear and convincing evidence supporting such a finding exists. I write specially to address the district court's error, under our current jurisprudence, in failing to consider whether viable alternatives to terminating the father's parental rights exist that would be in the child's best interests, even upon a finding of abandonment.
The father argues that the district court erred by not considering viable alternatives to termination as required by the two-step termination analysis this Court established in Ex parte Beasley, 564 So.2d 950, 952 (Ala.1990).
Specifically, the father argues, first, that the district court erred by overlooking the alternative of allowing him to visit the child at the child's paternal grandmother's house under the grandmother's supervision. The problem with this argument is that ordering visitation at the paternal grandmother's house was not an alternative available to the district court; the district court did not have jurisdiction to modify the circuit court's order so as to allow visitation at the paternal grandmother's house or elsewhere. See A.S. v. W.T.J., 984 So.2d 1196 (Ala.Civ.App.2007). The district court did not err in failing to consider visitation at the paternal grandmother's house as a viable alternative to the termination of the father's parental rights.
Second, the father argues that the district court erred by not considering the status quo as a viable alternative to termination. The mother argues that no alternatives to termination need be considered because the district court found that the father abandoned the child. In support of her position, the mother quotes an opinion issued by the Court of Civil Appeals holding that "finding and rejecting viable alternatives to a termination of parental rights as required by Ex parte Beasley, [564 So.2d 950, 952 (Ala.1990) ], is not required in cases [of abandonment] because [Ala. Code 1975] § 12-15-65(m)(1) does not require `reasonable efforts' toward reunification in a case where the parent has abandoned the child." W.L.H. v. B.L.M., 829 So.2d 173, 175 (Ala.Civ.App.2002) (opinion by Pittman, J., joined by Thompson, J.). However, in a well-reasoned opinion concurring in the result in W.L.H., Justice Murdock, then sitting on the Court of Civil *1012 Appeals, and joined by Presiding Judge Yates and Judge Crawley,[6] wrote:
"I am not convinced that the `viable-alternatives' prong identified in [Ex parte] Beasley, [564 So.2d 950 (Ala. 1990),] may be read so narrowly. In some cases, there may be `viable alternatives' to termination other than family reunification. For example, in S.M.W. v. J.M.C., 679 So.2d 256 (Ala.Civ.App. 1996), we affirmed the denial of termination of a father's parental rights where the father had had only sporadic contact with the approximately five-year-old child because of the father's incarceration for a felony; we noted that while the trial court in that case had determined that grounds for termination existed, it had also concluded that `"it would be in the best interests of the child that the father be given an opportunity to pursue the relationship with his son in the future."' 679 So.2d at 258. To like effect is D.C. v. J.C., 842 So.2d 17 (Ala.Civ.App.2002), in which Judge Pittman opined that a viable alternative to terminating the parental rights of a mother and a father on the petition of the child's paternal grandparents would be `to maintain the present situation maintain custody with the grandparents and maintain ... supervised visitation.' 842 So.2d at 20.
"While I agree that the trial court's judgment terminating the parental rights of the mother in this case is supported by the evidence and is due to be affirmed (see A.R.E. v. E.S.W., 702 So.2d 138 (Ala.Civ.App.1997)), I do not believe that in doing so this court should blur the distinction between the concepts of `viable alternatives' to termination and `reasonable efforts' to return a child to a parent's custodial control. I therefore concur in the result."
829 So.2d at 175-76 (Murdock, J., concurring in the result).
I would hold that, as our caselaw currently stands, the second part of the Ex parte Beasley test applies in cases where a parent has abandoned the child. In that regard, I find persuasive the reasoning set forth in Justice Murdock's opinion concurring in the result in W.L.H. As defined by Ala.Code 1975, § 12-15-65(m), "`reasonable efforts' refers to efforts made to preserve and reunify families prior to the placement of a child in foster care, to prevent or eliminate the need for removing the child from the child's home, and to make it possible for a child to return safely to the child's home." "Reasonable efforts" to prevent removal of a child from its home and from the parents' custody are not the same as "viable alternatives" to terminating parental rights.
Considering viable alternatives to termination, even in cases of abandonment, is required by Ex parte Beasley, as we have applied the holding of that case in conjunction with the statute governing the termination of parental rights. Ex parte Beasley requires that, "[f]irst, the court must find that there are grounds for the termination of parental rights, including, but not limited to, those specifically set forth in [Ala.Code 1975,] § 26-18-7." 564 So.2d at 954. Under Section 26-18-7(a)(1), a trial court determining whether abandonment constitutes grounds for termination of parental rights is not required to consider "proof ... of reasonable efforts to prevent removal or reunite the child with the parents." (Emphasis added.)
*1013 Ex parte Beasley further requires that, "after the court has found that there exist grounds to order the termination of parental rights, the court must inquire as to whether all viable alternatives to a termination of parental rights have been considered." 564 So.2d at 954. Thus, under Ex parte Beasley, upon finding that abandonment constitutes a ground for a termination of parental rights, a trial court must consider whether viable alternatives to termination exist. As Justice Murdock stated in W.L.H., "[i]n some cases, there may be `viable alternatives' to termination other than family reunification." 829 So.2d at 175.
In this case, the district court did not consider whether other viable alternatives existed. In particular, the district court did not consider whether maintaining the status quo, under which the father was obligated to pay child support while complying with a no-visitation order that could be lifted only at the circuit court's discretion, was a viable alternative.
"The termination of parental rights is an extreme matter and is not to be considered lightly." S.M.W. v. J.M.C., 679 So.2d 256, 258 (Ala.Civ.App.1996) (citing Ex parte Beasley). "Inasmuch as the termination of parental rights strikes at the very heart of the family unit, a court should terminate parental rights only in the most egregious of circumstances." Ex parte Beasley, 564 So.2d at 952. Here, the district court found evidence that the father was under a no-visitation order, that his attempts to contact his child have been sporadic, and that he is in arrears in payment of child support. However, as Presiding Judge Crawley stated in his dissent to the no-opinion affirmance issued by the Court of Civil Appeals:
"Although the father failed to regularly support the child and offered reasons for the existence of his child-support arrearage that may have suggested some degree of financial irresponsibility, there are less drastic measures to effectuate the payment of child support than [the threat of] terminating parental rights."
1 So.3d at 1001.
Moreover, even if the father does not seek reinstatement of his visitation rights, the child's right to support and inheritance remain. See In re Beasley, 564 So.2d 959, 960 (Ala.Civ.App.1990).
The child here is safely residing with the mother. In particular, I note that, in this case, there is no stepfather seeking to terminate the father's rights so that he can adopt the child and fulfill parental responsibilities as to the child in place of the biological father. Further, this is not a case in which maintenance of the status quo would thwart the goal of ultimately providing the child permanent placement in a safe environment, as is often the case when, for example, the State petitions to terminate parental rights.
Here, the district court found no evidence indicating that the father posed any danger to the child. The district court expressly found "no evidence" of emotional illness, mental illness, or mental deficiency of the father; no evidence of excessive use of alcohol or controlled substances of such duration or nature so as to render the father unable to care for needs of the child; no evidence that the child had been maltreated or abused by the father or that the child was in danger of being maltreated or abused; and no evidence of a conviction of and imprisonment for a felony. Courts of this State have often found that "termination of parental rights is not appropriate in cases ... in which the children are safely residing with the custodial parent and the continuation of the noncustodial parent's parental rights does not present any harm" to the children's best interests, and that, in many cases, "a less *1014 drastic alternative, usually maintaining the status quo, is viable and should be utilized." A.J.H.T. v. K.O.H., 983 So.2d 394, 407 (Ala.Civ.App.2007)(Moore, J., concurring in part and dissenting in part) (citing Sutton v. Elrod, 724 So.2d 551 (Ala.Civ. App.1998); Beasley, 564 So.2d 959; Miller v. Knight, 562 So.2d 274 (Ala.Civ.App. 1990); Talley v. Oliver, 628 So.2d 690 (Ala. Civ.App.1993); S.M.W. v. J.M.C., 679 So.2d 256 (Ala.Civ.App.1996); and Thornton v. Thornton, 519 So.2d 960 (Ala.Civ. App.1987)).
For these reasons, under Ex parte Beasley, a trial court considering the termination of parental rights is to consider whether viable alternatives exist that would be in the child's best interest, even in cases of abandonment. Accordingly, I would hold that, under our current jurisprudence, the district court erred in not considering as a viable alternative to stripping the father of his parental rights and obligations whether allowing the father to retain his parental rights under the current circumstances would serve the best interests of the child.
STUART, Justice (concurring in the result).
I concur in the result reached in this case because I do not believe the record in this case supports the finding that terminating the father's parental rights is in the child's best interest.
I have written at length concerning the judicial engraftment of the "no viable alternative" second prong of the termination-of-parental-rights test this Court adopted in Ex parte Beasley, 564 So.2d 950 (Ala.1990). See Ex parte F.P., 857 So.2d 125 (Ala.2003)(Stuart, J., dissenting). I do not agree with that part of the rationale in the majority opinion that requires a trial court to consider whether all viable alternatives to terminating parental rights have been exhausted. The focus in termination-of-parental-rights cases should remain the best interest of the child, which unfortunately was judicially removed from the formula years ago.
NOTES
[1] The father paid the $1,000 child-support payment and was released from jail.
[2] The nature of "the testimony of the [mother] with regard to the [father's] recent actions" is not specified in the record.
[3] The district court specifically found "no evidence" indicating that the father suffered emotional illness, mental illness, or mental deficiency; no evidence indicating that the father used alcohol or drugs of such duration or nature as to render the father unable to care for the child; and no evidence indicating that the father maltreated or abused the child or that the child was in danger of being maltreated or abused by the father. The district court found no evidence of a conviction of a felony and did not base its decision to terminate the father's parental rights solely on the father's criminal record.
[4] The text of Ala.Code 1975, § 26-18-7, is set forth, infra, under the heading "Standard of Review."
[5] The mother testified that she obtained the protection-from-abuse order following an argument in which the mother told the father he was not allowed to stay at her house. According to the mother, the father responded by telling her he would "beat the hell out of" her and slash the tires on her vehicle, and as he was driving away he drove over her front yard with his truck, leaving furrows in her yard. After hearing ore tenus evidence regarding the incident, the district court found that the father did not pose a threat of abuse or maltreatment to the child, and the district court did not base its decision to terminate his parental rights on the incident or on the existence of the protection-from-abuse order.
[6] Justice Murdock's special writing, concurring in the result, represented the expression of the majority of the judges serving on the Court of Civil Appeals when the opinion in W.L.H. was issued.