COBB, Chief Justice
(concurring specially).
Although the district court erred in finding that the father had voluntarily relinquished his parental rights, the district court is not precluded on remand from finding abandonment on some other basis if clear and convincing evidence supporting such a finding exists. I write specially to address the district court’s error, under our current jurisprudence, in failing to consider whether viable alternatives to terminating the father’s parental rights exist that would be in the child’s best interests, even upon a finding of abandonment.
The father argues that the district court erred by not considering viable alternatives to termination as required by the two-step termination analysis this Court established in Ex parte Beasley, 564 So.2d 950, 952 (Ala.1990).
Specifically, the father argues, first, that the district court erred by overlooking the alternative of allowing him to visit the child at the child’s paternal grandmother’s house under the grandmother’s supervision. The problem with this argument is that ordering visitation at the paternal grandmother’s house was not an alternative available to the district court; the district court did not have jurisdiction to modify the circuit court’s order so as to allow visitation at the paternal grandmother’s house or elsewhere. See A.S. v. W.T.J., 984 So.2d 1196 (Ala.Civ.App.2007). The district court did not err in failing to consider visitation at the paternal grandmother’s house as a viable alternative to the termination of the father’s parental rights.
Second, the father argues that the district court erred by not considering the status quo as a viable alternative to termination. The mother argues that no alternatives to termination need be considered because the district court found that the father abandoned the child. In support of her position, the mother quotes an opinion issued by the Court of Civil Appeals holding that “finding and rejecting viable alternatives to a termination of parental rights as required by Ex parte Beasley, [564 So.2d 950, 952 (Ala.1990) ], is not required in cases [of abandonment] because [Ala. Code 1975] § 12-15-65(m)(l) does not require ‘reasonable efforts’ toward reunification in a case where the parent has abandoned the child.” W.L.H. v. B.L.M., 829 So.2d 173, 175 (Ala.Civ.App.2002) (opinion by Pittman, J., joined by Thompson, J.). However, in a well-reasoned opinion concurring in the result in W.L.H., Justice Murdock, then sitting on the Court of Civil *1012 Appeals, and joined by Presiding Judge Yates and Judge Crawley,[6] wrote:
“I am not convinced that the ‘viable-alternatives’ prong identified in [Ex parte] Beasley, [564 So.2d 950 (Ala.1990),] may be read so narrowly. In some cases, there may be ‘viable alternatives’ to termination other than family reunification. For example, in S.M.W. v. J.M.C., 679 So.2d 256 (Ala.Civ.App. 1996), we affirmed the denial of termination of a father’s parental rights where the father had had only sporadic contact with the approximately five-year-old child because of the father’s incarceration for a felony; we noted that while the trial court in that case had determined that grounds for termination existed, it had also concluded that ‘ “it would be in the best interests of the child that the father be given an opportunity to pursue the relationship with his son in the future.” ’ 679 So.2d at 258. To like effect is D.C. v. J.C., 842 So.2d 17 (Ala.Civ.App.2002), in which Judge Pittman opined that a viable alternative to terminating the parental rights of a mother and a father on the petition of the child’s paternal grandparents would be ‘to maintain the present situation— maintain custody with the grandparents and maintain ... supervised visitation.’ 842 So.2d at 20.
“While I agree that the trial court’s judgment terminating the parental rights of the mother in this case is supported by the evidence and is due to be affirmed (see A.R.E. v. E.S.W., 702 So.2d 138 (Ala.Civ.App.1997)), I do not believe that in doing so this court should blur the distinction between the concepts of ‘viable alternatives’ to termination and ‘reasonable efforts’ to return a child to a parent’s custodial control. I therefore concur in the result.”
829 So.2d at 175-76 (Murdock, J., concurring in the result).
I would hold that, as our caselaw currently stands, the second part of the Ex parte Beasley test applies in cases where a parent has abandoned the child. In that regard, I find persuasive the reasoning set forth in Justice Murdock’s opinion concurring in the result in W.L.H. As defined by Ala.Code 1975, § 12-15-65(m), “‘reasonable efforts’ refers to efforts made to preserve and reunify families prior to the placement of a child in foster care, to prevent or eliminate the need for removing the child from the child’s home, and to make it possible for a child to return safely to the child’s home.” “Reasonable efforts” to prevent removal of a child from its home and from the parents’ custody are not the same as “viable alternatives” to terminating parental rights.
Considering viable alternatives to termination, even in cases of abandonment, is required by Ex parte Beasley, as we have applied the holding of that case in conjunction with the statute governing the termination of parental rights. Ex parte Beasley requires that, “[f]irst, the court must find that there are grounds for the termination of parental rights, including, but not limited to, those specifically set forth in [Ala.Code 1975,] § 26-18-7.” 564 So.2d at 954. Under Section 26-18-7(a)(l), a trial court determining whether abandonment constitutes grounds for termination of parental rights is not required to consider “proof ... of reasonable efforts to prevent removal or reunite the child with the parents.” (Emphasis added.)
*1013 Ex palie Beasley further requires that, “after the court has found that there exist grounds to order the termination of parental rights, the court must inquire as to whether all viable alternatives to a termination of parental rights have been considered.” 564 So.2d at 954. Thus, under Ex parte Beasley, upon finding that abandonment constitutes a ground for a termination of parental rights, a trial court must consider whether viable alternatives to termination exist. As Justice Murdock stated in W.L.H., “[i]n some cases, there may be ‘viable alternatives’ to termination other than family reunification.” 829 So.2d at 175.
In this case, the district court did not consider whether other viable alternatives existed. In particular, the district court did not consider whether maintaining the status quo, under which the father was obligated to pay child support while complying with a no-visitation order that could be lifted only at the circuit court’s discretion, was a viable alternative.
“The termination of parental rights is an extreme matter and is not to be considered lightly.” S.M.W. v. J.M.C., 679 So.2d 256, 258 (Ala.Civ.App.1996) (citing Ex parte Beasley). “Inasmuch as the termination of parental rights strikes at the very heart of the family unit, a court should terminate parental rights only in the most egregious of circumstances.” Ex parte Beasley, 564 So.2d at 952. Here, the district court found evidence that the father was under a no-visitation order, that his attempts to contact his child have been sporadic, and that he is in arrears in payment of child support. However, as Presiding Judge Crawley stated in his dissent to the no-opinion affirmance issued by the Court of Civil Appeals:
“Although the father failed to regularly support the child and offered reasons for the existence of his child-support arrear-age that may have suggested some degree of financial irresponsibility, there are less drastic measures to effectuate the payment of child support than [the threat of] terminating parental rights.”
1 So.3d at 1001.
Moreover, even if the father does not seek reinstatement of his visitation rights, the child’s right to support and inheritance remain. See In re Beasley, 564 So.2d 959, 960 (Ala.Civ.App.1990).
The child here is safely residing with the mother. In particular, I note that, in this case, there is no stepfather seeking to terminate the father’s rights so that he can adopt the child and fulfill parental responsibilities as to the child in place of the biological father. Further, this is not a case in which maintenance of the status quo would thwart the goal of ultimately providing the child permanent placement in a safe environment, as is often the case when, for example, the State petitions to terminate parental rights.
Here, the district court found no evidence indicating that the father posed any danger to the child. The district court expressly found “no evidence” of emotional illness, mental illness, or mental deficiency of the father; no evidence of excessive use of alcohol or controlled substances of such duration or nature so as to render the father unable to care for needs of the child; no evidence that the child had been maltreated or abused by the father or that the child was in danger of being maltreated or abused; and no evidence of a conviction of and imprisonment for a felony. Courts of this State have often found that “termination of parental rights is not appropriate in cases ... in which the children are safely residing with the custodial parent and the continuation of the noncustodial parent’s parental rights does not present any harm” to the children’s best interests, and that, in many cases, “a less *1014 drastic alternative, usually maintaining the status quo, is viable and should be utilized.” A.J.H.T. v. K.O.H., 983 So.2d 394, 407 (Ala.Civ.App.2007)(Moore, J., concurring in part and dissenting in part) (citing Sutton v. Elrod, 724 So.2d 551 (Ala.Civ.App.1998); Beasley, 564 So.2d 959; Miller v. Knight, 562 So.2d 274 (Ala.Civ.App. 1990); Talley v. Oliver, 628 So.2d 690 (Ala. Civ.App.1993); S.M.W. v. J.M.C., 679 So.2d 256 (Ala.Civ.App.1996); and Thornton v. Thornton, 519 So.2d 960 (Ala.Civ. App.1987)).
For these reasons, under Ex parte Beasley, a trial court considering the termination of parental rights is to consider whether viable alternatives exist that would be in the child’s best interest, even in cases of abandonment. Accordingly, I would hold that, under our current jurisprudence, the district court erred in not considering as a viable alternative to stripping the father of his parental rights and obligations whether allowing the father to retain his parental rights under the current circumstances would serve the best interests of the child.

. Justice Murdock’s special writing, concurring in the result, represented the expression of the majority of the judges serving on the Court of Civil Appeals when the opinion in W.L.H. was issued.