PER CURIAM.
A.J.H.T. (“the mother”) appeals a judgment terminating her parental rights regarding J.H., born in February 1999; K.H., born in April 1997; and B.H., born in July 1994 (J.H., K.H., and B.H. are hereinafter collectively referred to as “the children”). We affirm.
On November 15, 2005, K.O.H. (“the father”) petitioned the juvenile court to terminate the mother’s parental rights regarding the children. The juvenile court held an ore tenus proceeding on July 31, 2006, regarding the termination petition. On August 31, 2006, the juvenile court entered its judgment terminating the mother’s parental rights. That judgment states, in pertinent part:
“After due consideration of the testimony received and an in-camera inter *396 view with the minor children, the Court finds as follows[:] 1. That the Defendant/mother ... has successfully maintained stable housing and employment for over one year; 2. The Defendant/mother ... has a prior history of drug use and a felony conviction, as does the Plaintiff/father ...; 3. Both parties have successfully remained drug free for over two years.
“However, the Defendant/mother has failed to provide any support or maintenance for the minor children and has not maintained regular visits nor any form of contact or communication with the minor children for over four years. This lack of effort or inability to adjust her circumstances to meet the needs of the minor children constitutes abandonment of the said minor children .... ”
On September 13, 2006, the mother filed a notice of appeal and requested, among other things, certification of the record as adequate for appellate review or, in the alternative, a transfer of the case to the circuit court for a trial de novo. The juvenile court then certified the record as adequate for appellate review on September 26, 2006. On December 7, 2006, the mother filed a motion titled “Motion to Reconsider Certification of Record as Adequate.” The juvenile court subsequently denied that motion.
On appeal, the mother first argues that the juvenile court erred by certifying the record as adequate for appellate review because, she says, (1) the parties did not agree to the in camera examination of the children and (2) the juvenile court conducted the in camera examination without recording it.
The transcript of the proceeding does not indicate when the juvenile court suspended the proceeding to conduct the in camera examination. However, Robert Beck, the father’s attorney, submitted an affidavit to the juvenile court stating that the parties had agreed to the in camera examination and were aware that the juvenile court would conduct that examination without the presence of a court reporter or a recording device. The mother neither made an objection to the in camera examination at trial that was noted on the record nor submitted an affidavit disputing the allegations in Beck’s affidavit. The mother cannot induce error of the juvenile court by agreeing to the in camera examination with knowledge that it was not going to be recorded and argue on appeal that the juvenile court erred on this basis. We therefore cannot reverse the juvenile court’s order certifying the record as adequate for appellate review on this ground. See Atkins v. Lee, 603 So.2d 937, 945 (Ala.1992) (“A party may not predicate an argument for reversal on ‘invited error,’ that is, ‘error into which he [or she] has led or lulled the trial court.’ Dixie Highway Express, Inc. v. Southern Ry., 286 Ala. 646, 651, 244 So.2d 591, 595 (1971); see also State Farm Mutual Automobile Ins. Co. v. Humphres, 293 Ala. 413, 418, 304 So.2d 573, 577 (1974).”). Cf. Wilson v. State Dep’t of Human Res., 527 So.2d 1322, 1325 (Ala.Civ.App.1988) (concluding that the parties’ did not preserve their arguments for appellate review because they failed to raise a timely objection to the juvenile court’s in camera examination of the parties’ children).
Next, the mother argues that insufficient evidence supports the juvenile court’s judgment terminating her parental rights.
The following is a recitation of the pertinent evidence. The mother and the father have two children together, J.H. and K.H., ages 7 and 9 at the time of the trial, respectively. The mother also has a daughter, B.H., age 12 at the time of the trial, born of a prior relationship. The mother and the father were married to *397 each other; however, they subsequently divorced in March 2000.
The trial court entered a divorce judgment awarding the father custody of J.H. and K.H. In its judgment, it made a finding of unfitness regarding the mother, a finding of dependency regarding B.H., and awarded custody of B.H. to the father. The trial court awarded the mother unsupervised visitation and ordered her to pay $454.91 in monthly child support.
After the divorce, the father remarried to H.H. (“the stepmother”). The father and the stepmother have one child together, and the stepmother has two children from a previous relationship, all of whom reside with them. The father is a cashier working at a garden center, and the stepmother is a homemaker.
The evidence established that the mother exercised her visitation rights until sometime in 2001. The mother testified of the first instance when the father began to interfere with her visitation rights. According to the mother, the children were in her physical custody while the father’s son from another relationship had been hospitalized. After the father retrieved the children from the mother’s physical custody, the stepmother became angry and told the mother that she could no longer exercise visitation with the children. She further testified that the stepmother and the father had threatened to call law enforcement if she attempted to exercise visitation with the children. The mother testified that she had made attempts to contact the father to exercise visitation but that her attempts were of no avail. K.Ho. (“the maternal grandmother”) and two of the mother’s sisters also testified that the mother’s attempts to exercise visitation were thwarted by the father. The mother last visited with the children during the time of the maternal grandmother’s visitation in the summer of 2001. When the father discovered that the mother had visited with the children, he no longer permitted the maternal grandmother to visit with them.
However, the father denied that the stepmother made decisions regarding the mother’s visiting with the children. The stepmother also denied interfering with the mother’s visitation rights or threatening to call law enforcement in the event the mother sought to exercise her rights.
Contrary to the mother’s rendition of the facts, the father testified that in late 2000 the mother called him before her visitation period was scheduled to end, requesting that he obtain the children from her. According to the father, the children were sick and filthy when he arrived to retrieve the children. Additionally, he stated that the mother did not have electricity and running water in her home. The father then told the mother that she could not exercise visitation until she obtained adequate housing.
The father testified that the next time the mother requested visitation was when she inadvertently encountered the father at a convenience store. In response to the mother’s request, the father told the mother that he was unaware of her current condition; the mother did not expound on her situation. The father testified that although he and the stepmother moved twice, the mother failed to contact him despite her having his telephone number. According to the father, the next time he received correspondence from the mother was when he was served with notice of her petition seeking to hold him in contempt for his alleged interference with her visitation rights in March 2005. The father testified that he responded by seeking to have the mother’s visitation with the children supervised but that he then petitioned to terminate the mother’s parental rights based upon the children’s desire not *398 to visit with the mother. The stepmother petitioned to adopt the children, and the father petitioned to adopt B.H.
The mother admitted that the children desired not to visit with her. She also admitted that she has not purchased any food or clothing for the children and that she has not had any contact with the children since June 2001. The mother stated that she has not given the children gifts or cards since Christmas 2000 because she believed that her attempts to give the children gifts would be of no avail since she was told that she could not have any contact with the children. However, she testified that she had purchased the children toys, which she placed in the room that she had furnished for them.
The mother also admitted that she had failed to tender her monthly child-support obligation to the father although she was, at times, able to pay child support. The mother estimated an arrearage totaling approximately $37,000. The mother testified that she had failed to pay child support because she had been unemployed for a period of time. The mother testified that she had retained counsel to petition for a modification of child support but that that attorney had failed to file that petition on her behalf. She further testified that her counsel at trial had advised her to save money for the children. She stated that she had saved between $2,400 and $2,500 and that she was saving $200 per month for the children. At the time of trial, the mother had been employed with the same employer since February 2005, earning $10.00 an hour.
The mother has enrolled in college and has remarried. The mother has been living in a trailer for nearly two years, in which she and her husband reside. Although her current husband has been arrested for possession of a controlled substance, he participated in drug court and has been “clean” since the time of his participation in the drug-court program.
The mother has convictions for manufacturing and possession of a controlled substance. The mother testified that she was last arrested in February 2004 for a drug-related offense and has not had any “trouble” with law enforcement since that time. Although she did not serve a prison sentence, she was on parole at the time of trial.
The mother testified that, after her conviction, she began participating in a court-referred drug program, beginning in March 2004; that program requires her to submit to random drug tests. The mother also has voluntarily sought treatment for her drug addiction. John McAnulty, a therapist at the mother’s outpatient-treatment center, testified that he has known the mother since March 2004 and that she has been “clean” since that time. McAnulty also testified that the mother has improved substantially. He further testified that the mother sought treatment for her drug addiction in order to be reunited with the children. Ray Pickard, a substance-abuse counselor at the outpatient-treatment center, testified that the mother counsels other patients and disseminates religious materials to patients at the treatment center. The mother testified that she has been “drug-fi-ee” since February 2004.
At the time of trial, the father was on probation for drug-related offenses and last violated the terms of his probation in 2005 by possessing a firearm. The father admitted that he and the mother had used drugs together. Also, the father testified that he and the mother had used drugs during the times the mother was exercising visitation with the children.
“ ‘In ore tenus proceedings, the trial court is the sole judge of the facts and *399 of the credibility of the witnesses, and it should accept only that testimony which it considers worthy of belief.’ Clemons v. Clemons, 627 So.2d 431, 434 (Ala.Civ.App.1993).” Ex parte R.E.C., 899 So.2d 272, 279 (Ala.2004). Also,
“ ‘[t]he ore tenus rule provides that a trial court’s findings of fact based on oral testimony “have the effect of a jury’s verdict,” and that “[a] judgment, grounded on such findings, is accorded, on appeal, a presumption of correctness which will not be disturbed unless plainly erroneous or manifestly unjust.” Noland Co. v. Southern Dev. Co., 445 So.2d 266, 268 (Ala.1984).’ ”
Ex parte R.E.C., 899 So.2d at 279. We are ever mindful that “[t]he paramount consideration in a case involving the termination of parental rights is the best interests of the children.” Q.F. v. Madison County Dep’t of Human Res., 891 So.2d 330, 335 (Ala.Civ.App.2004).
In Ex parte Beasley, 564 So.2d 950, 951 (Ala.1990), our supreme court stated: “when one parent seeks to terminate the other parent’s parental rights, a ‘finding of dependency,’ as a matter of law, is not required .... ” However, if a nonparent petitions to terminate a parent’s parental rights, that “court must make a ‘finding of dependency.’ ” Id. at 952. Furthermore,
“[t]he two-prong test that a court must apply in a parental rights termination case brought by a custodial parent consists of the following: First, the court must find that there are grounds for the termination of parental rights, including, but not limited to, those specifically set forth in § 26-18-7[, Ala. Code 1975]. Second, after the court has found that there exist grounds to order the termination of parental rights, the court must inquire as to whether all viable alternatives to a termination of parental rights have been considered.”
Id. at 954.
Additionally, § 26-18-7 provides:
“(a) If the court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child, the court shall consider, and in cases of voluntary relinquishment of parental rights may consider, but not be limited to, the following:
“(1) That the parents have abandoned the child, provided that in such cases, proof shall not be required of reasonable efforts to prevent removal or reunite the child with the parents.
“(2) Emotional illness, mental illness or mental deficiency of the parent, or excessive use of alcohol or controlled substances, of such duration or nature as to render the parent unable to care for needs of the child.
“(3) That the parent has tortured, abused, cruelly beaten, or otherwise maltreated the child, or attempted to torture, abuse, cruelly beat, or otherwise maltreat the child, or the child is in clear and present danger of being thus tortured, abused, cruelly beaten, or otherwise maltreated as evidenced by such treatment of a sibling.
“(4) Conviction of and imprisonment for a felony.
*400 “(5) Unexplained serious physical injury to the child under such circumstances as would indicate that such injuries resulted from the intentional conduct or willful neglect of the parent.
“(6) That reasonable efforts by the Department of Human Resources or licensed public or private child care agencies leading toward the rehabilitation of the parents have failed.
“(7) That the parent has been convicted by a court of competent jurisdiction of any of the following:
“a. Murder or voluntary manslaughter of another child of that parent.
“b. Aiding, abetting, attempting, conspiring, or soliciting to commit murder or voluntary manslaughter of another child of that parent.
“c. A felony assault or abuse which results in serious bodily injury to the surviving child or another child of that parent. The term ‘serious bodily injury’ means bodily injury which involves substantial risk of death, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty.
“(8) That parental rights to a sibling of the child have been involuntarily terminated.
“(b) Where a child is not in the physical custody of its parent or parents appointed by the court, the court, in addition to the foregoing, shall also consider, but is not limited to the following:
“(1) Failure by the parents to provide for the material needs of the child or to pay a reasonable portion of its support, where the parent is able to do so.
“(2) Failure by the parents to maintain regular visits with the child in accordance with a plan devised by the department, or any public or licensed private child care agency, and agreed to by the parent.
“(3) Failure by the parents to maintain consistent contact or communication with the child.
“(4) Lack of effort by the parent to adjust his or her circumstances to meet the needs of the child in accordance with agreements reached, including agreements reached with local departments of human resources or licensed child-placing ágencies, in an administrative review or a judicial review.
“(c) In any case where the parents have abandoned a child and such abandonment continues for a period of four months next preceding the filing of the petition, such facts shall constitute a rebuttable presumption that the parents are unable or unwilling to act as parents. Nothing in this subsection is intended to prevent the filing of a petition in an abandonment case prior to the end of the four-month period.”
(Emphasis added.) Pursuant to § 26-18-3(1), Ala.Code 1975, “abandonment” is defined as
“[a] voluntary and intentional relinquishment of the custody of a child by a parent, or a withholding from the child, without good cause or excuse, by the parent, of his presence, care, love, protection, maintenance or the opportunity for the display of filial affection, or the failure to claim the rights of a parent, or failure to perform the duties of a parent.”
The mother argues that the juvenile court erred by failing to make a specific finding of dependency regarding B.H., which is required because the father, who *401 is not a parent of B.H., petitioned to terminate her parental rights.[1]
Although our supreme court in Ex parte Beasley stated that a court must make a “finding of dependency” when a nonparent seeks to terminate a parent’s parental rights, Beasley does not require courts to make such a finding explicit. Rather, this court has concluded that a finding of dependency can be implicit. See L.L.M. v. S.F., 919 So.2d 307, 310-11 (Ala.Civ.App. 2005). Furthermore, the evidence supports an implicit finding of dependency based upon the juvenile court’s determination that the mother had abandoned the children.[2] See § 12 — 15—l(10)i., Ala.Code 1975 (defining a “dependent child” as “[a] child .... [w]ho has been abandoned by the child’s parents, guardian, or other custodian”).
Next, the mother argues that the juvenile court erred in terminating her parental rights by failing to consider evidence of her current conditions regarding her willingness or ability to perform her parental duties and by failing to consider viable alternatives to termination.
In Ex parte T.V., 971 So.2d 1, 10 (Ala.2007), our supreme court reversed this court’s no-opinion affirmance of a judgment terminating the parental rights of a mother who had previously been a chronic drug addict, homeless, and unemployed; who had only provided nominal financial support on the child’s behalf; and who had failed to visit the child for over four years. The mother in T.V. had subsequently recovered from her addiction, married, and obtained stable housing and steady employment for approximately two years preceding the filing of the termination-of-parental-rights petition. Id. at 3. Our supreme court held that despite the mother’s “periodic” abandonment of the child, the juvenile court had failed to consider evidence of the mother’s current conditions and, in turn, had failed to consider visitation with the child as a viable alternative to termination. Id. at 10.
However, T.V. is distinguishable from the case now before us. In T.V., the juvenile court had before it evidence indicating that the child, who was four years old at the time the petition was filed, was unaware that the mother was the child’s biological mother. Ex parte T.V., 971 So.2d at 16. In T.V., the mother and the child had begun to establish a bond, without the child’s knowledge that the mother was the child’s biological mother. Id. Furthermore, the juvenile court had before it the recommendation of the child’s guardian ad litem, stating that termination of the mother’s parental rights was not in the best interest of the child. Id. Accordingly, our supreme court found substantial that “visitation — which upon all accounts does not harm [the child] and which the guardian ad litem concluded is good for [the child] — would appear to be a viable alternative to the termination of [the mother’s] parental rights.” Id. at 10 (emphasis added).
In the case now before us, the only evidence contained in the record on appeal regarding the mother’s relationship with the children is the father’s and the mother’s testimony that the children, who were ages 7, 9, and 12 at the time of trial, did not wish to visit with the mother. Additionally, the juvenile court received the in camera testimony of the children; that *402 testimony was not included in the record on appeal. Unlike the child in T.V., two of the children in the present case, namely B.H. and K.H., are of an age where they are aware that the mother is their biological mother and know that she has not had any contact with them for an extensive period of time. Based upon that fact and the untranscribed in camera examination of the children, the juvenile court could have concluded that the mother’s prolonged absence had a detrimental effect on the children and, therefore, that termination of the mother’s parental rights would serve the children’s best interests. Based on this conclusion, it also could have concluded that visitation with the children was not a viable alternative. As this court and our supreme court have repeatedly stated, the paramount concern in termination proceedings is the best interest of the child. See Ex parte J.R., 896 So.2d 416, 423 (Ala.2004); A.A. v. Cleburne County Dep’t of Human Res., 912 So.2d 261, 264 (Ala.Civ.App.2005); Q.F., 891 So.2d at 335; and V.O. v. State Dep’t of Human Res., 876 So.2d 1151, 1153 (Ala.Civ.App.2003).
As Judge Murdock stated in his dissent in K.W.J. v. J.W.B., 933 So.2d 1075, 1081 (Ala.Civ.App.2005), rev’d, 933 So.2d 1081 (Ala.2005):
“[Cjhildren grow. They are read to and tucked in at night. They are nursed to health. They are taught. They are nurtured. They are loved. And they love back. And bonds are formed — but not with a [mother] who has allowed [herself] to remain absent from the [children’s lives].”
Based upon the foregoing, we cannot conclude that the juvenile court erred by failing to consider evidence of the mother’s current conditions in terminating her parental rights and by failing to consider viable alternatives to termination.
AFFIRMED.
THOMPSON, P.J., concurs.
BRYAN, J., concurs specially, with writing, which THOMAS, J., joins.
PITTMAN, J., concurs in the result, without writing.
MOORE, J., concurs in part and dissents in part, with writing.

. Although the Circuit Court of DeKalb County, in its divorce judgment, found B.H. dependent, we need not determine whether the circuit court had jurisdiction to find B.H. dependent.

. The mother does not argue on appeal that the juvenile court erred by finding that she had abandoned the children.