PER CURIAM.
On June 8, 2007, this Court granted the petition for a writ of certiorari filed by J.E. (“the father”) to review the no-opinion affirmance by the Court of Civil Appeals of the Etowah District Court’s order terminating his parental rights as to the minor child born of his marriage to V.C.E. (“the mother”). For the reasons stated herein, we reverse and remand.

Facts

We note that this case does not involve a stepparent who is seeking to adopt a child and fulfill parental responsibilities to the child in place of the biological parent. This case also does not involve the termination of parental rights in a dependency matter as a step toward providing a child with permanent placement in a safe environment, as is often the case when, for example, the State petitions a court to terminate parental rights. The child here, whose best interests are the ultimate concern in this case, is residing with the custodial parent, the mother.
The father and the mother married, had a child, and, in January 1999, divorced. The child was three years old when the parents divorced. The mother was awarded sole legal and physical custody of the minor child; the father was granted visitation rights and was ordered to pay child support in the amount of $766.96 per month. The mother and father reconciled in June 1999, and the reconciliation lasted until January 2001.
The father irregularly paid child support, and the mother filed a petition in the Etowah Circuit Court seeking to have the father held in contempt. The parties reached an agreement regarding custody and support, and on December 12, 2002, Judge William H. Rhea III entered an order enforcing the parties’ agreement. The circuit court’s order held the father in contempt for failure to pay child support; awarded the mother a judgment in the amount of $12,169.27 for past-due child support and $55.15 for past-due dental expenses for the child; reduced the father’s child-support obligation to $102 per week; and ordered the father to pay $18 per week toward the arrearage. The order further stated that “[t]he failure of the [father] to make one child support payment will result in this Court issuing a Pick Up Order which will incarcerate the [father] in the Etowah Detention Center for a period of 30 days.”
The mother later filed a second contempt petition in the Etowah Circuit Court. Judge Rhea granted her petition. By an order entered December 16, 2003, the circuit court ordered the father to be jailed for 30 days or until the father made a $1,000 cash child-support payment;[1] further reduced the father’s child-support obligation to $50 per week “due to [the father’s] being without a job”; and ordered the father to inform his attorney of record when he obtained employment so that his *1005 child-support obligation could be recalculated accordingly. In addition, Judge Rhea’s December 16, 2003, order stated:
“Due to the fact that the [father] admitted in open court to his continued use of drugs, and, further, due to the testimony of the [mother] with regard to the [father’s] recent actions,1[2] the [father] will not be allowed to have visitation rights until he can prove to this Court that he has rehabilitated himself to the point where he is a worthy candidate for visitation with said child.”
On March 30, 2006, the mother filed a petition in the District Court of Etowah County to terminate the father’s parental rights.
On May 1, 2006, the district court held a detailed hearing on the mother’s petition, during which both the mother and the father testified. The district court heard evidence as to the father’s child-support payments and child-support arrearage, his sporadic attempts at contact and visitation with the child, and his criminal record. The district court also heard allegations that the father had used drugs in the past and that he had shown up at the mother’s house in an altered mental state demanding to be allowed to visit the child.[3]
On May 8, 2006, the district court judge, Judge William D. Russell, Jr., entered an order containing the following findings of fact and conclusions of law:
“It should be noted that the father has made no effort to have Judge Rhea modify [the circuit court’s December 16, 2003, order suspending visitation]. According to the testimony of the mother in the present hearing, the father attempted to visit the child only twice from June 2003 through the date of the hearing. The last attempted visit by the father was on January 26, 2005. Contrary to Judge Rhea’s order, the mother offered to allow supervised visitation in her home, but refused any unsupervised visitation. The father made no attempt to contact the child after 01/26/2005 until a telephone call to the mother’s place of employment in February 2006. Paragraph 6 of Judge Rhea’s Order of 12/16/2003 further required the father to immediately notify his attorney and the mother’s attorney ‘upon his being reemployed.’ The testimony in the present hearing further revealed that the father is currently employed, earning $12 per hour. Obviously, he failed to report that increased income to his attorney, to the mother’s attorney, or to Judge Rhea, so as to have his weekly child support obligation increased. The father is very content to continue paying $50.00 per week. The father strongly objects to the termination of his parental rights, and points to the fact that he has paid his $50.00 per week child support on a regular, continuous basis since December 2003.
“The statute [Ala.Code 1975, § 26-18-7,[4]] requires in subsection (a) that the Court *1006 consider eight factors, which it has done. The primary factors demonstrated by the evidence with respect to the father are subsections (a)(1) and (b)(1). He has in effect voluntarily relinquished his parental rights by failing to re-petition Judge Rhea to reinstate his visitation rights. He tries to blame the mother’s refusals as the reason for his lack of contact. His blame is misplaced. Visitation was not at the discretion of the mother. Judge Rhea had indefinitely suspended all visitation. The father should have re-petitioned Judge Rhea first. He has failed to ‘provide for the material needs of the child or to pay a reasonable portion of its support, where the parent is able to do so.’ As to the father, the Court found no evidence of the factors listed in subsection (a)(2), (3), (4), (5), (7), and (8). Subsection (b) requires several additional judicial considerations. The Court found ample evidence of the factors in subsections (b)(1), (2), (3), and (4). As to subsection (4), the father has clearly demonstrated his inability and unwillingness to adjust his circumstances to meet the needs of the child.
“IT IS THEREFORE ORDERED ADJUDGED AND DECREED BY THE COURT AS FOLLOWS:
“(1) All parental rights of the father ... with and to [the child] are hereby permanently terminated.”
(Capitalization in original; second emphasis added.)
On May 16, 2006, the father appealed the district court’s judgment to the Alabama Court of Civil Appeals. That court affirmed the district court’s judgment without an opinion. Presiding Judge Crawley filed an opinion, dissenting from the no-opinion affirmance. J.E. v. V.C.E, 1 So.3d 1001 (Ala.Civ App.2006) (Crawley, P.J., dissenting).
The father then filed a petition for the writ of certiorari to this Court. This Court granted the petition. The father argues that the Court of Civil Appeals erred in affirming the district court’s judgment because, he argues, that court improperly considered the factors outlined in Ala.Code 1975, § 26-18-7(b), which applies when a child is “not in the physical custody of its parent”; concluded without sufficient evidence that the father had abandoned the child; and failed to consider viable alternatives to the termination of the father’s parental rights.

Standard of Review

“[T]he primary focus of a court in cases involving the termination of parental rights is to protect the welfare of the children and at the same time to protect the rights of their parents.” Ex parte Beasley, 564 So.2d 950, 952 (Ala.1990); see also Ala.Code 1975, § 26-18-2, a part of Alabama’s Child Protection Act, § 26-18-1 et seq. “The right to parent one’s child is a fundamental right,” K.W. v. J.G., 856 So.2d 859, 874 (Ala.Civ.App.2003), and because “the termination of parental rights strikes at the very heart of the family unit, a court should terminate parental rights only in the most egregious of circumstances.” Beasley, 564 So.2d at 952.
Where, as here, the custodial parent petitions to terminate the parental rights of the noncustodial parent, the trial court’s analysis consists of two parts. 564 So.2d at 954. First, the trial court must determine whether grounds exist for terminating parental rights. 564 So.2d at 954. Grounds exist for terminating parental rights if the parent in question is “unable or unwilling to discharge [his] responsibilities to and for the child, or ... the conduct or condition of the parent[] is *1007 such as to render [him] unable to properly care for the child and ... such conduct or condition is unlikely to change in the foreseeable future.” Ala.Code 1975, § 26-18-7(a) (stating that, under such conditions, a court “may terminate the parental rights of the parent[]”). A trial court’s order terminating parental rights must be based on “clear and convincing evidence, competent, material, and relevant in nature.” Ala.Code 1975, § 26-18-7(a).
In determining whether such grounds exist, factors for the trial court’s consideration include, but are not limited to, those grounds set forth in Ala.Code 1975, § 26-18-7. Beasley, 564 So.2d at 954. The factors set forth in Ala.Code 1975, § 26-18-7, are as follows:
“(a) ... In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child, the court shall consider, and in cases of voluntary relinquishment of parental rights may consider, but not be limited to, the following:
“(1) That the parents have abandoned the child, provided that in such cases, proof shall not be required of reasonable efforts to prevent removal or reunite the child with the parents.
“(2) Emotional illness, mental illness or mental deficiency of the parent, or excessive use of alcohol or controlled substances, of such duration or nature as to render the parent unable to care for needs of the child.
“(3) That the parent has tortured, abused, cruelly beaten, or otherwise maltreated the child, or attempted to torture, abuse, cruelly beat, or otherwise maltreat the child, or the child is in clear and present danger of being thus tortured, abused, cruelly beaten, or otherwise maltreated as evidenced by such treatment of a sibling.
“(4) Conviction of and imprisonment for a felony.
“(5) Unexplained serious physical injury to the child under such circumstances as would indicate that such injuries resulted from the intentional conduct or willful neglect of the parent.
“(6) That reasonable efforts by the Department of Human Resources or licensed public or private child care agencies leading toward the rehabilitation of the parents have failed.
“(7) That the parent has been convicted by a court of competent jurisdiction of any of the following:
“a. Murder or voluntary manslaughter of another child of that parent.
“b. Aiding, abetting, attempting, conspiring, or soliciting to commit murder or voluntary manslaughter of another child of that parent.
“c. A felony assault or abuse which results in serious bodily injury to the surviving child or another child of that parent. The term ‘serious bodily injury’ means bodily injury which involves substantial risk of death, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty.
“(8) That parental rights to a sibling of the child have been involuntarily terminated.
“(b) Where a child is not in the physical custody of its parent or parents appointed by the court, the court, in addition to the foregoing, shall also consider, but is not limited to the following:
“(1) Failure by the parents to provide for the material needs of the child or to pay a reasonable portion of *1008 its support, where the parent is able to do so.
“(2) Failure by the parents to maintain regular visits with the child in accordance with a plan devised by the department, or any public or licensed private child care agency, and agreed to by the parent.
“(3) Failure by the parents to maintain consistent contact or communication with the child.
“(4) Lack of effort by the parent to adjust his or her circumstances to meet the needs of the child in accordance with agreements reached, including agreements reached with local departments of human resources or licensed child-placing agencies, in an administrative review or a judicial review.
“(c) In any case where the parents have abandoned a child and such abandonment continues for a period of four months next preceding the filing of the petition, such facts shall constitute a re-buttable presumption that the parents are unable or unwilling to act as parents. Nothing in this subsection is intended to prevent the filing of a petition in an abandonment case prior to the end of the four-month period.”
If the trial court determines, based on all relevant factors, that grounds exist for terminating parental rights, then the court must proceed to the second part of its analysis, which is to consider whether all viable alternatives to terminating parental rights have been exhausted. Beasley, 564 So.2d at 954.
A trial court’s factual findings premised on an ore tenus hearing are presumed correct. See Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994). “ ‘This presumption is based on the trial court’s unique position to directly observe the witnesses and to assess their demeanor and credibility.’” Ex parte T.V., 971 So.2d 1, 4 (Ala.2007)(quoting Ex parte Fann, 810 So.2d 631, 633 (Ala.2001)). On appeal, a judgment entered on factual findings based on ore tenus evidence will not be overturned “ ‘unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court’s discretion is shown. To substitute our judgment for that of the trial court would be to reweigh the evidence. This Alabama law does not allow.’ ” Perkins, 646 So.2d at 47 (quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993)).
However, the ore tenus standard of review has no application to a trial court’s conclusions of law or its application of law to the facts; a trial court’s ruling on a question of law carries no presumption of correctness on appeal. Perkins, 646 So.2d at 47; Eubanks v. Hale, 152 So.2d 1113, 1144-45 (Ala.1999). Thus, an appellate court will “review the trial court’s conclusions of law and its application of law to the facts under the de novo standard of review.” Washington v. State, 922 So.2d 145, 158 (Ala.Crim.App.2005).

Analysis

I. Did the district court err in considering the factors listed inAla.Code 1975, § 26-18-7(b), as a basis for terminating the father’s parental rights?

The father argues that the district court erred in considering the factors listed in Ala. Code 1975, § 26-18-7(b), as a basis for terminating his parental rights. That subsection sets forth factors to be considered “[wjhere a child is not in the physical custody of its parent or parents appointed by the court.”
The father argues that, because the child was in the physical custody of the mother, the child was “in the physical custody of its parent or parents appointed by *1009 the court” and, therefore, that subsection (b) does not apply in this case. However, the courts of this State have consistently applied subsection (b) in considering whether to terminate a noncustodial parent’s rights, even when the child is in the physical custody of the custodial parent. See In re T.M.A., 590 So.2d 298, 299 (Ala.Civ.App.1991) (stating that, “[w]hen the child is not in the physical custody of the parent in question, the court may properly consider the parent’s failure to provide for the child’s material needs,” a factor from subsection (b)); see also, e.g., A.S. v. W.J.T., 984 So.2d 1196 (Ala.Civ.App.2007) (considering evidence of father’s child-support arrearage in reviewing trial court’s ruling on the mother’s petition to terminate the father’s parental rights, where the mother had primary physical custody of the children); A.J.H.T. v. K.O.H., 983 So.2d 394 (Ala.Civ.App.2007) (considering evidence of mother’s child-support arrear-age, failure to visit or to maintain contact, and inability to adjust circumstances to meet children’s needs, in addressing the father’s petition to terminate the mother’s parental rights where the father had physical custody of the children). Moreover, in terminating parental rights, in addition to the factors listed in § 26-18-7, a court may consider “any other factors that are relevant to the child’s welfare.” In re Colbert, 474 So.2d 1143, 1145 (Ala.Civ.App. 1985).
The factors listed in subsection (b), such as failure to pay child-support obligations and failure to visit or maintain contact with the child, are clearly relevant in this case. The district court did not err in considering the factors listed in 26-18-7(b).

II. Did the district court err in finding that the father had abandoned the child by voluntarily relinquishing his parental rights?

The father next argues that the district court erred in finding that he had abandoned the child because he “has in effect voluntarily relinquished his parental rights by failing to re-petition Judge Rhea to reinstate his visitation rights.” For the reasons stated below, we agree.
Under Alabama’s Child Protection Act, any one of the following three circumstances constitutes “abandonment” of a child by a parent: (1) “[a] voluntary and intentional relinquishment of the custody of a child by a parent,” or (2) “a withholding from the child, without good cause or excuse, by the parent, of his presence, care, love, protection, maintenance or the opportunity for the display of filial affection,” or (3) “the failure to claim the rights of a parent, or failure to perform the duties of a parent.” Ala.Code 1975, § 26-18-3. In this case, the district court concluded that the father abandoned the child by voluntarily relinquishing his parental rights when he failed to seek the reinstatement of his -visitation rights. The record in this case contains no evidence to support the district court’s legal conclusion that the father’s failure to seek reinstatement of visitation constituted the voluntary relinquishment of his parental rights.
In Ex parte D.J., 645 So.2d 303, 306-07 (Ala.1994), this Court stated:
“ ‘Relinquishment’ is defined as ‘[a] forsaking, abandoning, renouncing or giving over a right.’ Black’s Law Dictionary 1161 (5th ed.1979). ... Voluntary relinquishment is thus essentially synonymous with the concept of ‘waiver,’ which has been defined as the ‘voluntary and intentional surrender or relinquishment of a known right.’ Dominex, Inc. v. Key, 456 So.2d 1047, 1058 (Ala.1984).”
(Original emphasis omitted; emphasis added.)
Nothing in the record supports the district court’s conclusion that by not seeking *1010 reinstatement of his visitation rights the father intended to surrender his parental rights. The father offered several reasons for failing to visit the child, including the mother’s insistence (during the court-ordered suspension of visitation rights) that any visits between the father and the child occur in her house under her supervision and a protection-from-abuse order prohibiting the father from being around the mother for one year.[5]
If the district court disbelieved the father’s reasons for failing to maintain contact with the child, it was well within its authority to do so. However, the district court was not within its authority in concluding that the father had “voluntarily relinquished” his parental rights, because there is no evidence in this record to support the inference that the father intended to surrender those rights. The record contains uncontradicted evidence indicating that, between December 16, 2003, when Judge Rhea terminated the father’s visitation rights, and March 30, 2006, the date the mother filed her petition in the district court to terminate the father’s parental rights, the father regularly paid child support (although in an amount below what he would have paid if he had complied with Judge Rhea’s order and reported his employment), and that the father attempted to contact or see the child on several occasions. Although these facts may well indicate irresponsible and extremely poor parenting, neither these facts nor any other evidence in the record supports a legal conclusion that because the father had not attempted to petition for a reversal of Judge Rhea’s visitation order he intended to surrender his parental rights with regard to the child.
This Court stresses that its holding as to the abandonment issue is limited to a determination that this record does not support the district court’s legal conclusion that the father “voluntarily relinquished ” his parental rights based solely on the fact that the father had not attempted to repetition Judge Rhea for the reinstatement of his visitation rights.
By so holding, this Court does not take the position that evidence of the failure to seek reinstatement of visitation rights can never support a finding of abandonment. For example, failure to seek visitation may indicate a voluntary relinquishment of parental rights when that failure is accompanied with evidence of an intent to surrender those rights. Further, there are ways to abandon a child other than voluntarily relinquishing parental rights. As noted above, abandonment can occur if the parent “withhold[s] from the child, without good cause or excuse, ... his presence, care, love, protection, maintenance or the opportunity for the display of filial affection,” or if the parent “fail[s] to claim the rights of a parent, or fail[s] to perform the duties of a parent.” Aa.Code 1975, § 26-18-3. Thus, when clear and convincing evidence supports the conclusion that a parent’s failure to seek visitation falls into one of these two categories, then such failure may support a finding of abandonment.
*1011 Nothing in this opinion is intended to prevent the district court’s reconsideration, on remand, of whether there is clear and convincing evidence demonstrating that the father has abandoned the child by means other than “voluntary relinquishment” of his parental rights or whether the father is otherwise “unable or unwilling,” § 26-18-7(a), Ala.Code 1975, to provide for the needs of the child.

Conclusion

For the reasons stated above, the Court of Civil Appeals’ judgment is reversed and the case remanded to that court for it, in turn, to reverse the district court’s judgment terminating the father’s parental rights and to remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
SEE, LYONS, WOODALL, SMITH, and PARKER, JJ., concur.
COBB, C.J., concurs specially.
STUART and BOLIN, JJ., concur in the result.
MURDOCK, J., recuses himself.

. The father paid the $1,000 child-support payment and was released from jail.

. The nature of “the testimony of the [mother] with regard to the [father’s] recent actions" is not specified in the record.

. The district court specifically found "no evidence” indicating that the father suffered emotional illness, mental illness, or mental deficiency; no evidence indicating that the father used alcohol or drugs of such duration or nature as to render the father unable to care for the child; and no evidence indicating that the father maltreated or abused the child or that the child was in danger of being maltreated or abused by the father. The district court found no evidence of a conviction of a felony and did not base its decision to terminate the father’s parental rights solely on the father’s criminal record.

.The text of Ala.Code 1975, § 26-18-7, is set forth, infra, under the heading "Standard of Review."

. The mother testified that she obtained the protection-from-abuse order following an argument in which the mother told the father he was not allowed to stay at her house. According to the mother, the father responded by telling her he would “beat the hell out of” her and slash the tires on her vehicle, and as he was driving away he drove over her front yard with his truck, leaving furrows in her yard. After hearing ore tenus evidence regarding the incident, the district court found that the father did not pose a threat of abuse or maltreatment to the child, and the district court did not base its decision to terminate his parental rights on the incident or on the existence of the protection-from-abuse order.