MOORE, Judge,
concurring in the result.
I concur with the result reached by the main opinion, but I do not agree entirely with its analysis. Therefore, I set out below my reasoning as to why the juvenile court did not commit reversible error in terminating the father’s parental rights.
Pursuant to AIa.Code 1975, § 26-18-7(c), if a parent has abandoned a child and that abandonment continues for a period of four months next preceding the filing of the petition to terminate parental rights, those facts raise a rebuttable presumption that the parent is unable or unwilling to act as parent to the child. In this case, the maternal grandparents filed their petition to terminate the father’s parental rights on May 1, 2007. The juvenile court applied the § 26 — 18—7(c) presumption after determining that the father had abandoned the child and that the abandonment had continued during the four months next preceding the filing of the petition. The father maintains that the juvenile court erred in finding abandonment because, he says, he telephoned or attempted to telephone the child numerous times between January and February 2007.
As set out in the main opinion, “abandonment” is statutorily defined as:
“A voluntary and intentional relinquishment of the custody of a child by a parent, or a withholding from the child, without good cause or excuse, by the parent, of his presence, care, love, protection, maintenance or the opportunity for the display of filial affection, or the failure to claim the rights of a parent, or failure to perform the duties of a parent.”
Ala.Code 1975, § 26-18-3(1). This court has construed the foregoing statute as setting out multiple, alternative grounds upon which a juvenile court may find that a parent has abandoned a child. See J.L. v. State Dep’t of Human Res., 961 So.2d 839, 848-49 (Ala.Civ.App.2007). However, all these grounds share at least one common characteristic — they are all directed at the failure of the parent to assume and exercise his or her parental rights and duties in relation to the child.
Assuming the evidence established that the father had telephoned the child throughout January and February 2007, that fact establishes only that the father maintained contact with the child. It does not overcome the undisputed evidence indicating that, after the mother’s death, the father never claimed his rights as a parent by petitioning for custody or for increased visitation rights — he consistently failed to exercise the monthly visitation rights he had been granted by the juvenile court on December 16, 2005, and he never paid any *905 child support. Maintaining contact, although integral to any personal relationship, is not tantamount to claiming parental rights or discharging parental duties. The juvenile court therefore correctly determined that the father had abandoned the child.
The father essentially argues in his brief to this court that he is, in fact, able and willing to properly parent the child, which, if proven, would rebut the presumption raised by his abandonment of the child. See A.J.H.T. v. K.O.H., 983 So.2d 394, 400 (Ala.Civ.App.2007) (Moore, J., concurring in part and dissenting in part) (“if evidence of the parent’s current conditions shows that the parent is, in fact, able and willing to discharge his or her responsibilities to the child, the presumption of unfitness raised by the parent’s abandonment of the child would be rebutted”). However, even assuming that there was some evidence indicating that the father may have been able to parent the child, clear and convincing evidence demonstrated that he was obviously not willing to discharge his parental responsibilities. The father had no contact with the child after February 2007. Although he had sufficient funds to support the child, he did not undertake any attempt to do so. He did not make any effort to regain custody of the child, even after the maternal grandparents filed their petition to terminate his parental rights. The record evidence very clearly supports the inference that the father was content to leave the custody and care of the child to the maternal grandparents. Under these circumstances, the juvenile court was justified in concluding that the maternal grandparents had sufficiently proven grounds for termination.
The father next argues that the juvenile court did not explore viable alternatives before terminating his parental rights. As recently stated by our supreme court, in termination-of-parental-rights cases the juvenile court must “ensure that ‘all viable alternatives to a termination of parental rights have been considered.’ ” Ex parte T.V., 971 So.2d 1, 5 (Ala.2007) (quoting Ex parte Beasley, 564 So.2d 950, 954 (Ala. 1990)). The genesis of the “viable alternatives” prong of the Beasley test has been well-documented. See D.M.P. v. State Dep’t of Human Res., 871 So.2d 77, 85-91 (Ala.Civ.App.2003) (plurality opinion); N.J. v. Madison County Dep’t of Human Res., 980 So.2d 997, 1001 (Ala.Civ.App.2007) (plurality opinion); and Ex parte F.P., 857 So.2d 125, 144 (Ala.2003) (Stuart, J., dissenting). That standard originated as a means of protecting the constitutional rights of parents by assuring that their fundamental right to the care, custody, and control of their natural children could be completely, legally eradicated only if warranted by a compelling governmental interest and if “less drastic measures would be unavailing.” Roe v. Conn, 417 F.Supp. 769, 779 (M.D.Ala.1976).
However, under longstanding Alabama law, when clear and convincing evidence indicates that a parent has abandoned a child, that knowing, voluntary, and intentional conduct acts as a forfeiture of the parent’s custodial rights to the child. See Ex parte G.C., 924 So.2d 651 (Ala.2005) (plurality opinion); Ex parte Terry, 494 So.2d 628 (Ala.1986); Albano v. Schofield, 45 Ala.App. 257, 260, 229 So.2d 33, 35 (Civ.1969); and Children’s Aid Soc’y v. Davis, 211 Ala. 344, 100 So. 325 (1924).[2] *906 Generally speaking, a constitutional right may be waived by a person who, with full knowledge of his or her right, acts in such a manner as to unequivocally indicate his or her intention not to exercise that right. See, e.g., Faretta v. California, 422 U.S. 806, 834, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In the context of parental rights, the Supreme Court of the United States has stated:
“[T]he mere existence of a biological link does not merit equivalent constitutional protection [as the rights of an unwed father who has ‘demonstrated a full commitment to the responsibilities of parenthood’]. The actions of judges neither create nor sever genetic bonds. ‘[T]he importance of the familial relationship, to the individuals involved and to the society, stems from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in “promot[ing] a way of life” through the instruction of children as well as from the fact of blood relationship.’
“The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child’s future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child’s development. If he fails to do so, the Federal Constitution will not automatically compel a state to listen to his opinion of where the child’s best interests lie.”
Lehr v. Robertson, 463 U.S. 248, 261-62, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983) (citations omitted; footnote omitted). Although speaking directly to the rights of unwed fathers, the Lehr opinion illustrates that a parent, who knowingly and voluntarily fails or refuses to assume a parental role, is not entitled to the constitutional protection afforded by the Due Process Clause of the United States Constitution based solely on a mere biological link to the child. See J.B. v. Jefferson County Dep’t of Human Res., 869 So.2d 475, 483 n. 7 (Ala.Civ.App.2003) (plurality opinion) (citing Lehr and arguing that a natural father who has abandoned the child and has no substantial relationship with child thereby loses due-process and statutory rights normally associated with the parent-child relationship).
By abandoning the child, the father in this case forfeited his constitutional right to the care, custody, and control of the child. By forfeiting that right, the father likewise forfeited the substantive due-process rights recognized in Roe v. Conn, supra. In short, once a parent forfeits his or her fundamental constitutional right to the care, custody, and control of a child, there is no substantive right existing that requires due-process protection. Hence, a juvenile court should be able to terminate the parental rights of a parent who has abandoned a child without first determining whether some less drastic alternative is unavailing.
Even if the father did retain his due-process rights despite his abandonment of the child, the judgment of the juvenile court is not due to be reversed. Clear and convincing evidence proved that the father was unwilling to foster a meaningful parent-child relationship with the child. As this court has noted, viable alternatives are those measures taken to overcome the circumstances preventing a beneficial parent-child relationship or those actions taken to preserve the favorable aspects of the parent-child relationship when correction is *907 not possible. See D.M.P., supra. In this case, clear and convincing evidence shows that the father is unwilling to parent the child. What corrective measures could the juvenile court take to make the father willing? What favorable aspect of the parent-child relationship is worth preserving? As the main opinion duly notes, the father presents no argument on these crucial points. 995 So.2d at 903. Accordingly, the juvenile court did not err by concluding that there was no viable alternative but to terminate the father’s parental rights in light of the overwhelming evidence of the father’s abandonment of, and lack of any meaningful relationship with, the child.
Finally, the father argues that the juvenile court erred in finding that it was in the best interests of the child to terminate his parental rights. As I have previously stated, I do not believe a juvenile court has to make a “best interests” determination in the adjudicatory phase of a termination-of-parental-rights case. See J.C. v. State Dep’t of Human Res., 986 So.2d 1172, 1196 (Ala.Civ.App.2007) (Moore, J., concurring specially). Nevertheless, to the extent that the law requires such a finding, I agree with the reasoning of the main opinion that the juvenile court did not exceed its discretion in determining that it was in the best interests of the child to terminate the father’s parental rights.

. In enacting § 26-18-7(c), the Alabama Legislature has modified the common law by declaring that abandonment creates only a rebuttable presumption that the parent is unable or unwilling to act as a parent. However, when the parent fails to rebut that presumption, grounds for termination are established and the juvenile court may terminate parental rights. Therefore, just as under the common law, unrebutted evidence of *906 abandonment acts as a forfeiture of parental rights.