PITTMAN, Judge.
T.M. (“the father”) appeals from a judgment terminating his parental rights as to T.L.M. (“the child”), who was born on October 23,1997.
This appeal has its genesis in a complaint filed by K.M.G. (“the mother”) to terminate the father’s parental rights. In that complaint, the mother asserted that the father had consistently failed to pay child support, that he had just completed serving a sentence for a child-abuse conviction, and that the child’s best interests would be served by terminating the father’s parental rights. The father and the mother were married on October 3, 1997; they separated on August 8, 1998. On October 19, 1999, the mother and the father were divorced by a judgment that incorporated an agreement of the parties. That judgment awarded primary physical custody and control of the child to the mother, awarded the father standard visitation, and ordered the father to pay monthly child support in the amount of $158.
In November 1999, the mother prosecuted a criminal nonsupport action against the father, who was subsequently convicted in February 2001; at that time, the father owed an arrearage of $1,900. The father subsequently spent time in jail for a theft conviction and then began visitation with the child again in 2003. In 2004, the father was charged with felony child abuse of the child of his paramour; he was convicted and served an additional prison term from November 2006 until January 2010. In 2009, several months before his release from prison, the father wrote the mother seeking visitation with the child, but the mother responded that the child did not want a relationship with him; she asked the father to voluntarily relinquish his parental rights. The father refused, and the mother thereafter brought the action from which this appeal arises.
The juvenile court conducted an ore ten-us proceeding on July 10, 2010; at that proceeding, the mother, the father, and the child’s paternal grandmother testified. On *851 August 16, 2010, the juvenile court terminated the father’s parental rights in a judgment containing detailed findings of fact; this timely appeal follows. In addition to asserting that the judgment does not comply with the either prong of the test set forth in Ex parte Beasley, 564 So.2d 950 (Ala.1990), the father also contends that the juvenile court erred in failing to appoint a guardian ad litem to represent the interests of the child.
Our standard of review of judgments terminating parental rights is well settled.
“A juvenile court’s factual findings, based on ore tenus evidence, in a judgment terminating parental rights are presumed to be correct and will not be disturbed unless they are plainly and palpably wrong. See, e.g., F.I. v. State Dep’t of Human Res., 975 So.2d 969, 972 (Ala.Civ.App.2007). Under express direction from our supreme court, in termination-of-parental-rights cases this court is ‘required, to apply a presumption of correctness to the trial court’s finding[s]’ when the trial court bases its decision on conflicting ore tenus evidence. Ex parte State Dep’t of Human Res., 834 So.2d 117, 122 (Ala.2002) (emphasis added). Additionally, we will reverse a juvenile court’s judgment terminating parental rights only if the record shows that the judgment is not supported by clear and convincing evidence. F.I., 975 So.2d at 972.”
J.C. v. State Dep’t of Human Res., 986 So.2d 1172, 1183 (Ala.Civ.App.2007) (footnote omitted); see also R.S. v. R.G., 995 So.2d 893, 900 (Ala.Civ.App.2008). Of course, “a trial court’s ruling on a question of law carries no presumption of correctness on appeal.” Ex parte J.E., 1 So.3d 1002, 1008 (Ala.2008); see also Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005).
The father first asserts that the juvenile court erred in failing to appoint a guardian ad litem to represent the interests of the child. The father cites § 12-15-304, Ala.Code 1975, as authority for his contention. We note that the Alabama Legislature recently totally revised and reorganized the statutory provisions pertinent to juvenile proceedings with the passage of the Alabama Juvenile Justice Act, § 12-15-101 et seq, Ala.Code 1975 (“the Act”), which took effect on January 1, 2009. Article 3 of the Act extensively modified the provisions relating to dependency and termination-of-parental-rights actions. See § 12-15-301 through § 12-15-324.
The pertinent statutory provision referenced by the father states: “In all dependency and termination of parental rights proceedings, the juvenile court shall appoint a guardian ad litem for a child who is a party to the proceedings and whose primary responsibility shall be to protect the best interests of the child.” Ala.Code 1975, § 12-15-304(a) (emphasis added). That language replaced the former provision that read: “The court, at any stage of a proceeding under this chapter, may appoint a guardian ad litem for a child who is a party to the proceeding if he has no parent or guardian or custodian appearing on his behalf or their interests conflict with those of the child.” Ala. Code 1975, former § 12-15-8(a) (emphasis added). The plain language of the statute now in effect mandates what was previously a discretionary appointment of a guardian ad litem whenever a child is a party to a dependency or termination-of-parental-rights action, regardless of whether that child has a “parent or guardian or custodian appearing on his behalf.”
We note, however, that the record reveals that the father failed to object to the lack of an appointment of a guardian ad litem at trial and that he failed to raise that issue in a postjudgment motion. It is *852 well settled that an appellate court cannot reverse a judgment on the basis of an argument that was not first presented to the trial court. Blasdel v. Blasdel, 65 So.3d 428, 432 (Ala.Civ.App.2010) (citing Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992)); see also White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1057 (Ala.2008) (quoting Singleton v. State Farm Fire & Cas. Co., 928 So.2d 280, 285 (Ala.2005)) (“ ‘we cannot reverse the judgment of the trial court based on an argument not made below and urged for the first time on appeal’ ”). “[0]ur review is restricted to the evidence and arguments considered by the trial court.” Andrews, 612 So.2d at 410.
The father also contends that the test established in Ex parte Beasley, supra, was not satisfied at trial.
“Where, as here, the custodial parent petitions to terminate the parental rights of the noncustodial parent, the trial court’s analysis consists of two parts. [Ex parte Beasley,] 564 So.2d [950,] 954 [ (Ala.1990) ]. First, the trial court must determine whether grounds exist for terminating parental rights. 564 So.2d at 954. Grounds exist for terminating parental rights if the parent in question is ‘unable or unwilling to discharge [his] responsibilities to and for the child, or ... the conduct or condition of the parent[] is such as to render [him] unable to properly care for the child and ... such conduct or condition is unlikely to change in the foreseeable future.’ Ala.Code 1975, [former] § 26-18-7(a) [ (amended and renumbered as § 12-15-319(a)) ]....”
Ex parte J.E., 1 So.3d at 1006-07. In addition, a judgment terminating parental rights must be based on “clear and convincing evidence, competent, material, and relevant in nature.” Ala.Code 1975, § 12-15-319(a).
At trial, both the father and the paternal grandmother complained that the mother had interfered with their familial relationship with the child. At the time of trial, the father was living in a house he owned with the paternal grandmother, but he admitted that he was unemployed, with little prospect of locating nonseasonal employment soon. The father’s testimony centered around his various attempts over the years to “contact” the mother to effectuate visitation and his excuses for failing to pay child support for nearly six years. For her part, the mother stated that the father and his family had been helpful and supportive before the parties’ separation in 1998 but that the father and his family had essentially disappeared from the child’s life following the parties’ divorce and the father’s incarceration for child abuse. She stated that, throughout the years, the father had always known where the child’s maternal grandmother lived and that he could always contact the mother through the maternal grandmother. The mother admitted that, sometime before the father was convicted of child abuse, she had “given up” trying to enforce the child-support provision of the parties’ divorce judgment because she believed that the father would never fulfill his monetary responsibilities to and for the child.
The father relies almost exclusively on Ex parte J.E., supra, to support his contention that the juvenile court erred in terminating his parental rights as to the child; his reliance on that decision is misplaced. In J.E., the noncustodial parent had been largely absent from the children’s lives, but the court did not find that he had voluntarily abandoned the children such that his parental rights could be terminated for that reason. Ex parte J.E., 1 So.3d at 1011. This case does not concern abandonment as a ground for terminating the father’s parental rights; it appears to *853 be more analogous to A.J.H.T. v. K.O.H., 983 So.2d 394 (Ala.Civ.App.2007), in which the termination of the parental rights of a noncustodial parent was held proper when that parent had not had any contact for four years with the pertinent children.
In this case, the record reveals that the father had been absent throughout much of the child’s life. Following the parties’ divorce in 1999, the father intermittently exercised visitation with the child until spring 2004; he rarely paid child support, and he had a $1,900 child-support arrearage by February 2001. In June 2004, the father was charged with felony child abuse regarding his paramour’s child, and he admitted at trial that he had not seen the child since the spring before his arrest on that charge. Although the father testified to the effect that the mother had deliberately disappeared and had interfered with his relationship with the child, the juvenile court specifically determined that the mother had not hidden or withheld the child from the father. Moreover, in its judgment, the juvenile court noted that, notwithstanding the father’s significant incarceration time, the father had not paid child support or consistently maintained a familial relationship with the child even during the years that the father had not been incarcerated. The juvenile court specifically determined that the father had only sporadically paid child support from March 2004 until his term of imprisonment began on November 30, 2006; moreover, the juvenile court noted that the father had not offered to support the child since his release from prison in January 2010.
In A.J.H.T., we concluded that the juvenile court could properly have determined that the noncustodial parent’s prolonged absence had been detrimental to the children who were old enough to recognize the parent’s absence and that termination of the noncustodial parent’s rights would be in the children’s best interests. A.J.H.T., 983 So.2d at 402. Likewise, in this case, the child is of an age to know that the absent parent is his biological father and that he had had no personal contact with the father for over six years. The mother’s testimony indicated that the child had developed a strong parental bond with his stepfather and that the child had no desire to visit the father. The juvenile court noted that not only had the father failed to maintain consistent contact with the child, see Ala.Code 1975, § 12-15-319(a)(10), but that he had failed to consistently pay child support both before and after his two terms of imprisonment, see Ala.Code 1975, § 12-15-319(a)(9). Moreover, the juvenile court referenced the fact that the father had been most recently in prison for a felony child-abuse conviction, and that fact alone would support a judgment terminating his parental rights. See § 12-15-319(a)(4), Ala.Code 1975.
The father asserts that the juvenile court in this case improperly concluded that he had voluntarily relinquished the child. We disagree that the juvenile court drew, or necessarily must have drawn, such a conclusion. From the findings of fact and conclusions reached by the juvenile court in its judgment, it is apparent that the father’s parental rights were terminated based upon “a withholding from the child, without good cause or excuse, ... of his ... presence, care, love, protection, maintenance, or the opportunity for the display of filial affection, or the failure to claim the rights of a parent, or failure to perform the duties of a parent.” § 12-15-301(1), Ala.Code 1975.
The father also asserts that the juvenile court failed to exhaust the viable alternative of maintaining the status quo and awarding him visitation with the child instead of terminating his parental rights. *854 Just as in A.J.H.T., supra, the evidence demonstrating that the child did not wish to visit with the father and that the child is old enough to know that the absent parent is his biological father with whom he had had no personal contact for over six years supports the conclusion that awarding the father visitation with the child would be detrimental to the child’s best interests and, thus, was not a viable alternative to termination of the father’s parental rights. A.J.H.T., 983 So.2d at 402.
The juvenile court explicitly determined that the father had been only sporadically part of the child’s life before his imprisonment in 2006, that he had not fulfilled his duty to pay child support, and that he had failed to exercise opportunities to develop a parent-child bond, such that the child was emotionally detached from the father. Based upon the pertinent statutory provisions, the testimony of the mother and the father, and the detailed findings of the juvenile court, we conclude that that court could properly determine that the termination of the father’s parental rights was in the best interests of the child. See, e.g., Sutton v. Elrod, 724 So.2d 551, 553 (Ala. Civ.App.1998) (appellate court will affirm judgment terminating parental rights unless the factual findings are unsupported by the evidence so as to be plainly wrong).
AFFIRMED.
THOMPSON, P.J., and THOMAS, J., concur.
BRYAN and MOORE, JJ., concur in the result, without writings.