DONALDSON, Judge.
H.W. (“the mother”) appeals from a judgment of the Morgan Juvenile Court (“the juvenile court”) terminating her parental rights to J.Z. (“the child”), who was born on January 13, 2010. We affirm the judgment of the juvenile court.
On July 26, 2013, the Morgan County Department of Human Resources (“DHR”) filed a petition in the juvenile court to terminate the parental rights of the mother and S.Z. (“the father”) to the child. DHR had previously filed a dependency petition in regard to the child in March 2011, and, as a result, the child had been in foster care since April 2011. On September 3, 2013, A.W., the child’s maternal aunt, moved to intervene in the action, seeking to be considered as a relative resource for placement of the child. The juvenile court heard ore tenus testimony at trial on the termination petition on September 4, 2013, at which the juvenile court granted AW.’s motion to intervene.[1]
DHR social worker Marquita McLemore testified that she began working with the mother and the child in August 2010. She testified that medical records reflected that the child had tested positive for cocaine and methadone at birth on January 13, 2010. McLemore testified that, after she began working with the mother, the mother tested positive for cocaine, benzo-diazepines, and methadone on August 18, 2010, at which time the child was placed with M.G., a great-aunt, pursuant to an out-of-home safety plan. McLemore testified that she offered the mother various services, including parenting classes, drug screens, and substance-abuse counseling. After the mother failed further drug screens and missed her in-home counseling, McLemore filed a dependency petition on behalf of DHR in March 2011. McLe-more testified that M.G. contacted her in April 2011 and reported that she could no longer take care of the child. McLemore testified that she located the mother at that time in the city jail and asked her if she knew of any other relatives who could possibly care for the child. McLemore testified that the mother said there were none. Thereafter, the child was placed in a foster home on April 12, 2011, and McLemore stopped working on the case.
DHR social worker Tiffany Barber testified that she began working on this case on April 12, 2011. Barber testified that services were offered to the mother, including drug screens and inpatient drug treatment. Barber testified that the mother began an inpatient drug-treatment program but left without completing the program when the mother discovered she was pregnant. Barber testified that she then offered a substance-abuse assessment to the mother through the Family Life Center, but the mother was terminated from that program for lack of participation. Barber testified that the mother continued to test positive for cocaine. Barber testified that the mother failed to maintain housing, employment, transportation, consistent communication with DHR, visitation with the child, or to pay her court-ordered child support. Barber testified that when the mother gave birth to her third child, that child tested positive for methadone at birth. Barber testified that the mother suggested A.W., K.P., and the child’s maternal grandmother as possible placement resources. Barber testified *144 that K.P.’s home study indicated that K.P. would not be a proper placement resource and the maternal grandmother was facing criminal drug charges. The father had no contact with the child.
DHR social worker Anna Shiro testified that she conducted a home study for A.W. in November 2012. Shiro recommended that the child not be placed with A.W. because of A.W.’s lack of sufficient finances, A.W.’s dependency on her boyfriend for finances, and concerns as to whether A.W. would allow the maternal grandmother to have contact with the child.
DHR social worker Denise Williams testified that she conducted a second home study for A.W. in August 2013. Williams also recommended that the mother’s children not be placed with A.W. because of her continued dependence on her boyfriend for income.
On December 27, 2013, the juvenile court entered a judgment, with detailed findings of fact, granting DHR’s petition to terminate the mother’s parental rights to the child.[2] On December 31, 2013, A.W. moved the juvenile court to alter, amend, or vacate its judgment, and the juvenile court denied that motion on January 13, 2014. The mother filed a motion for a new trial on January 13, 2014. Although the juvenile court entered an order on January 13, 2014, purporting to deny the mother’s motion for a new trial, the motion was untimely, and the juvenile court, thereafter, had no jurisdiction to rule on the motion. Rule 1(B), Ala. R. Juv. P.; Ex parte L.S., 141 So.3d 93 (Ala.Civ.App. 2013).
On January 13, 2014, the mother filed her notice of appeal from the juvenile court’s judgment. Although the mother’s notice of appeal was filed 17 days after the. juvenile court’s entry of the termination judgment, A.W.’s timely postjudgment motion tolled the time for the mother to file her notice of appeal until it was denied by the juvenile court on January 13, 2014. See Rule 4(a)(1)(E), Ala. R.App. P.; Rule 1(A), Ala. R. Juv. P.; and Wellcraft Marine, a Div. of Genmar Indus., Inc. v. Zarzour, 577 So.2d 414, 417 (Ala.1990). On appeal, the mother argues that the juvenile court’s judgment was not supported by the evidence.
The mother argues that the evidence was insufficient as a matter of law to support the termination of her parental rights and that the juvenile court lacked clear and convincing evidence to support a conclusion that DHR had made reasonable efforts toward rehabilitating the mother. “The right to parent one’s child is a fundamental right, and the termination of that right should occur ‘ “only in the most egregious of circumstances.’”” K.W. v. J.G., 856 So.2d 859, 874 (Ala.Civ.App.2003) (quoting L.M. v. D.D.F., 840 So.2d 171, 172 (Ala.Civ.App.2002), quoting in turn Ex parte Beasley, 564 So.2d 950, 952 (Ala.1990)).
“Grounds exist for terminating parental rights if the parent in question is ‘unable or unwilling to discharge [his] responsibilities to and for the child, or ... the conduct or condition of the parent[] is such as to render [him] unable to properly care for the child and ... such conduct or condition is unlikely to change in the foreseeable future.’ Ala. Code 1975, [former] § 26-18-7(a) [ (amended and renumbered as § 12-15-319(a))]....”
*145 Ex parte J.E., 1 So.3d 1002, 1006-07 (Ala.2008). The factors for the juvenile court to consider when determining whether to terminate parental rights are set out in § 12-15-319(a), Ala.Code 1975, which provides in part:
“(2) Emotional illness, mental illness, or mental deficiency of the parent, or excessive use of alcohol or controlled substances, of a duration or nature as to render the parent unable to care for needs of the child.
[[Image here]]
“(7) That reasonable efforts by the Department óf Human Resources or licensed public or private child care agencies leading toward the rehabilitation of the parents have failed.
[[Image here]]
“(9) Failure by the parents to provide for the material needs of the child or to pay a reasonable portion of support of the child, where the parent is able to do so.
“(10) Failure by the parents to maintain regular visits with the child in accordance with a plan devised by the Department of Human Resources, or any public or licensed private child care agency, and agreed to by the parent.
“(11) Failure by the parents to maintain consistent contact or communication with the child.
“(12) Lack of effort by the parent to adjust his or her circumstances to meet the needs of the child in accordance with agreements reached, including agreements reached with local departments of human resources or licensed child-placing agencies, in an administrative review or a judicial review.”
The mother’s brief on appeal consists of just over a single page of argument with only a few citations to authority that refer to general propositions of law as they existed prior to the adoption of the current Alabama Juvenile Justice Act, § 12-15-101 et seq., Ala.Code 1975. The mother provides no citations to the record to support her contentions on appeal. See Rule 28(a)(7), Ala. R.App. P. (requiring appellant to make “appropriate references to the record” in its statement of facts). In fact, the mother’s brief misstates her gender on multiple occasions and contains references to purported facts that appear to be a part of another case and unrelated to the present case. For example, in her statement of the facts, which consists of three sentences, the mother states that “[t]he child had been in the custody of the mother (Appellee).” It is clear from the record that the child has not been in the mother’s custody, and the mother is not the appellee. Elsewhere in her brief on appeal, the mother states that “[t]he fact that the appellant has entered an education facility ... should demonstrate that he is not PERMANENTLY incompetent or unsuitable. Thus, the appellant should not be punished for obtaining an education and he should be allowed to be given a chance to be a father to his child.” (Capitalization in original.) Additionally, the mother misstates the standard of appellate review of judgments terminating parental rights, asserting that review of the judgment “shall be de novo, or alternatively, abuse of discretion.” The mother’s brief fails to substantially comply with Rule 28(a), Ala. RApp. P.
“ ‘It is not the function of this court to search a record on appeal to find evidence to support a party’s argument,’ and ‘it is not the function of the appellate court “to make and address legal arguments for a party based on undeli-neated general propositions not supported by sufficient authority or argument.” ’ ”
Perry v. State Pers. Bd., 881 So.2d 1037, 1040 (Ala.Civ.App.2003) (quoting Hughes v. Hughes, 754 So.2d 636, 637 (Ala.Civ.App.1999), quoting in turn Dykes v. Lane *146 Trucking, Inc., 652 So.2d 248, 251 (Ala.1994)). See also White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008) (“Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived.”).
Nonetheless, we hold that the record supports the juvenile court’s conclusion that clear and convincing evidence existed demonstrating that DHR had made reasonable efforts toward rehabilitation of the mother. The evidence reveals that DHR offered the mother parenting-skills classes, drug screens, and in-home counseling for substance abuse. Although the mother completed the parenting-skills classes, she failed to comply with in-home counseling and drug screens, and she left a drug treatment facility before completing the program offered at that facility. The mother repeatedly tested positive for drug use. The juvenile court had before it sufficient evidence from which it could have determined that DHR undertook reasonable efforts to rehabilitate the mother and that those efforts had failed. § 12-15-319(a)(7), Ala.Code 1975; see also T.B. v. Cullman Cnty. Dep’t Human Res., 6 So.3d 1195, 1202 (Ala.Civ.App.2008) (determining that factual findings regarding whether DHR undertook reasonable efforts to rehabilitate a parent are subject to the ore tenus rule). The record also supports a finding that the mother abused drugs “of a duration or nature as to render the [mother] unable to care for needs of the child.” § 12-15-319(a)(2), Ala.Code 1975. The evidence in the record substantiates the juvenile court’s determinations that the mother was unable or unwilling to discharge her responsibilities to and for the child, that her conduct rendered her unable to properly care for the child, and that her conduct was unlikely to change in the foreseeable future.
The mother also asserts that the juvenile court erred by failing to consider viable alternatives to termination of her parental rights.
“If the trial court determines, based on all relevant factors, that grounds exist for terminating parental rights, then the court must proceed to the second part of its analysis, which is to consider whether all viable alternatives to terminating parental rights have been exhausted.”
Ex parte J.E., 1 So.3d at 1008 (citing Ex parte Beasley, 564 So.2d at 954). The question whether viable-alternatives to termination of parental rights exists is a question of fact. J.B. v. Cleburne County Dep’t of Human Res., 991 So.2d 273, 283 (Ala.Civ.App.2008). Our review of a juvenile court’s decision on the viability of a particular alternative to termination of parental rights is governed by the ore tenus rule. D.V. v. Colbert Cnty. Dep’t of Human Res., 121 So.3d 370, 379 (Ala.Civ.App.2012). DHR investigated every potential relative placement suggested by the mother, none of them were approved, and the mother offered no evidence to contradict DHR’s determinations. Based on that evidence and after assessing the credibility of the witnesses, the juvenile court could have been clearly convinced that none of the proffered relatives were a viable alternative to termination of the mother’s parental rights because placements with any of those relatives would not be in the best interests of the child.
Therefore, we affirm the judgment of the juvenile court.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. The record indicates that the juvenile court also heard testimony regarding A.F., the mother’s other child. However, there is no indication that the mother’s rights to A.F. are at issue in this appeal.

. The father’s parental rights were terminated as well. However, the father did not appeal that judgment.